(49 South. 593.)

No. 17,261.

FIRST NAT. BANK OF BIRMINGHAM, ALA., v. GIBERT & CLAY.

(April 26, 1909. Rehearing Denied June 7, 1909.)

MONEY RECEIVED (§ 9*)—MONEY WRONGFULLY OBTAINED—RECOVERY.

When money transferred to an honest taker has been obtained through a felony by the one transferring it, the honest taker, who receives it without knowledge of the felony and in due course of business, acquires a good title to it as against the one from whom it was stolen. Bad faith will alone defeat the right of the taker Mere ground of suspicion, or defect of title, or knowledge of circumstances which would create suspicion in the mind of a prudent man, or gross negligence on the part of the taker, will not defeat his title. Bad faith alone will defeat the right of the taker without knowledge.

The test is honesty and good faith, not diligence.

[Ed. Note.—For other cases, see Money Received, Cent. Dig. § 31; Dec. Dig. § 9.*]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; George Henry Théard, Judge.

Action by the First National Bank of Birmingham, Ala., against Gibert & Clay. Judgment for defendants, and plaintiff appeals. Affirmed.

Farrar, Jonas, Kruttschnitt & Goldberg, (Richard F. Goldsborough, of counsel), for appellant. Howe, Spencer, Fenner & Cocke, for appellees.

## Statement of the Case.

NICHOLLS, J. The plaintiff alleged that the commercial firm of Gibert & Clay, and the individual members thereof, Leon G. Gibert and George W. Clay, domiciled and doing business in the city of New Orleans, are justly and truly indebted unto petitioner in solido, in the full sum of $97,500, with legal interest from judicial demand, subject to a credit of $45,550, for this, to wit:

"That the defendants are now, and were during the months of February, March, April, May, and June, 1906, engaged as cotton future brokers in the city of New Orleans, operating what is known as a 'system of private wires'; that is, they had private telegraph and telephone wires running from their office in the city of New Orleans to various points in other states, maintaining branch offices in various cities in other states, to which these wires stretched, and particularly maintaining a branch office at Birmingham, in the state of Alabama, in charge of William Sims as manager and Charles M. Hayes as bookkeeper.

"That during the same period above set forth Alexander B. Chisholm, a young man of about 24 years of age, receiving a salary of about $2,000 a year, was the paying teller of the bank of petitioner in the city of Birmingham, whose duties were those usually imposed upon a paying teller of a bank, to pay out the funds of the bank on presentation of checks and drafts drawn upon the bank by its customers, for which purpose the cash money of the bank was placed in his possession and under his control; that this young man was well known in the community to be in extremely modest financial

circumstances, and his family and relations to be in the same financial situation, and all of the above-stated facts were well known to the said Gibert & Clay.

"That on or about the 5th day of February, 1906, the said Gibert & Clay permitted and induced the said Chisholm to begin a series of very large speculations with them in cotton futures, covering many thousands of bales, using for that purpose the fictitious name of S. M. Webster, which speculations were permitted and induced to continue down to and inclusive of the 29th day of June, 1906, and during the said period the said Gibert & Clay received from the said Chisholm, in cash, over the paying teller's counter, out of the funds belonging to petitioner and intrusted to the said Chisholm, they well knowing that the said funds belonged to petitioner and not to Chisholm, the sum of ninety-seven thousand five hundred dollars ($97,-500.00) in the following sums and on the following dates, to wit:

| | | |
|---|---|---|
| February 5, 1906 | $10,000 | 00 |
| March 1 | 2,000 | 00 |
| " 2 | 1,000 | 00 |
| " 3 | 5,000 | 00 |
| " 14 | 4,000 | 00 |
| " 19 | 2,000 | 00 |
| " 21 | 5,000 | 00 |
| " 24 | 3,900 | 00 |
| " 27 | 5,000 | 00 |
| " 30 | 5,000 | 00 |
| April 3 | 5,000 | 00 |
| " 24 | 5,000 | 00 |
| " 26 | 1,625 | 00 |
| May 17 | 5,000 | 00 |
| " 29 | 5,000 | 00 |
| " 29 | 5,000 | 00 |
| " 31 | 8,000 | 00 |
| June 1 | 5,000 | 00 |
| " 19 | 5,000 | 00 |
| " 23 | 5,000 | 00 |
| " 26 | 5,000 | 00 |

"That of the sum so abstracted by the said Chisholm and paid over to the said Gibert & Clay, with their knowledge and consent the said Chisholm subsequently replaced in the funds of the said bank the sum of forty-five thousand five hundred and fifty ($45,550.00) dollars, leaving a balance paid over by him to the said Gibert & Clay of fifty-one thousand nine hundred and fifty ($51,950.00) dollars, which sum represents the amount of money lost by the said Chisholm in the speculations aforesaid with the said Gibert & Clay.

"That it was entitled to recover all of the sums of money belonging to it paid over by the said Chisholm to the said Gibert & Clay with knowledge of the facts as above set forth.

"In view of the premises, petitioner prayed that the said commercial firm of Gibert & Clay and the said Leon G. Gibert and the said George W. Clay be cited to answer this demand, and after due proceedings had petitioner have judgment against said firm and the individual members thereof, in solido, in the sum of fifty-one

thousand nine hundred and fifty dollars ($51,-950.00), with legal interest from judicial demand, and all costs, and for general relief in the premises."

The defendants answered, pleading a general denial.

The court rendered judgment in favor of defendants and against plaintiff rejecting its demand assigning the following reasons:

"This is an action for the recovery of $51,950 of plaintiff's money, which was paid by its paying teller, Alexander R. Chisholm, to Gibert & Clay as margins on his individual contracts for the future delivery of cotton. It is alleged that, although the speculations were made in the name of S. M. Webster, it was well known to William Lee Sims, manager of Gibert & Clay's branch office at Birmingham, who executed the orders and received the money, that the real party in interest was Alexander R. Chisholm, who was trading under a fictitious name, and that the money was the money of the plaintiff bank, tortiously appropriated to his individual use. That fundamental allegation, in my opinion, after a careful review of the evidence of record, has not been substantiated. On the contrary, it is in proof that at the very beginning of the gambling speculations in February, 1906, Chisholm represented that S. M. Webster, for whom he gave the orders, was a gentleman of means and amply able to take care of his contracts, whose home was in Augusta, Ga., but who spent a good deal of his time in Birmingham, where he had a large account in the plaintiff bank, and that it was exclusively upon the faith of those representations, subsequently renewed, that Sims dealt with Chisholm.

"No suspicion that Webster was a fictitious person seems to have arisen in Sims' mind until his employers, Gibert & Clay, for reasons not disclosed by the record, in the latter part of June, 1906, requested him to have Webster identified or obtain from him a power of attorney. Sims immediately communicated this request to Chisholm, who refused to comply with it, saying that Webster preferred not to be known in the matter at all. Thereupon all outstanding contracts were closed and further trading with him for account of Webster was refused. Chisholm in his testimony has proven himself utterly unworthy of belief. I accept as true the statements of Sims and of Hayes, his employé. As I appreciate their evidence, Sims never had any dealings with Chisholm as paying teller, the money received from him was money supposedly withdrawn from the bank by his principal, Webster, and left with him for the purpose of his agency. Sims believed that he was receiving from Chisholm, agent, the money of Webster, principal, in payment of the latter's obligation. There was no duty resting upon Sims to ascertain how Webster had withdrawn the funds from the bank and transferred their custody to his agent, Chisholm.

That Webster was a fictitious person makes no difference. It was enough that Sims believed that there was a real depositor whose money had been duly withdrawn from the bank.

"Plaintiff invokes the doctrine that one who receives from an agent in settlement of his individual debt money known to belong to his principal is put upon inquiry as to the agent's authority to so use the money.

"Plaintiff also argues that with respect to factors, brokers, and avowed agents, whose vocation, whose daily business, is to deal with the property of others intrusted to them for the special purposes of their vocation, possession is not presumptive evidence of ownership, and cites a number of cases in which presidents or cashiers of banks had given, in settlement of their individual debts, checks or drafts drawn in their official capacity against funds belonging to the banks of which they were officers. It was properly held that those who accepted the checks or drafts took them under an obligation to ascertain at their peril that the officers had authority outside of their ordinary official authority to make the checks or drafts, and could not assume that they were acting within the scope of their official duties.

"The difference between those cases and the present one is obvious. As already stated, Sims did not receive from Chisholm, paying teller, money known to belong to the bank in payment of Chisholm's individual debt. Sims received from Chisholm, agent of Webster, money which he believed to belong to Webster, having been by him (Webster) withdrawn from the bank of which Chisholm happened to be paying teller. Judgment for defendants."

The plaintiff has appealed.

## Opinion.

The issues between the plaintiff and the defendant appear from the pleadings as recited herein. We have carefully examined the evidence adduced on the trial of the case. In his reasons for judgment the district judge says:

"Chisholm in his testimony has proven himself utterly unworthy of belief. I accept as true the statements of Sims and Hayes."

We are of the opinion that the trial judge reached correct conclusions as to the testimony of the parties named. The fact is conceded that Chisholm took advantage of his position of paying teller in the plaintiff bank to illegally and feloniously appropriate thousands of dollars of the bank's money, for which crime he now stands convicted. Sims, for alleged complicity in Chisholm's acts, was indicted, tried, and acquitted. He stands, therefore, before the court, relieved of that charge and vindicated.

Independently of the criminal charges and their result, we are satisfied of the truth of Sims' version of what took place between them. It would serve no useful purpose to set out in detail the grounds which lead us to agree with the views of the district judge on that subject. To do so would force us to stretch this opinion out to an unreasonable length.

We do not find the fact to be, as alleged in plaintiff's petition, that the "defendants Gibert & Clay induced Chisholm to begin a series of very large speculations with them in cotton futures." We are certain, on the contrary, that they acted throughout all of the transactions involved in this litigation with perfect good faith and in complete ignorance of wrongdoing on the part of Chisholm, and, we may add, of any wrongdoing on the part of Sims, had there been any wrongdoing on his part, which, we may say, we do not find there was.

We do not understand the plaintiff to charge as a fact that defendants had any actual knowledge of or had any participation in Chisholm's illegal acts, or in his having in any way passed outside the scope of his duty as paying teller of the bank. So far from Chisholm having been led astray by Sims, or induced to enter into speculations in cotton futures, to plaintiff's injury, the evidence discloses that at the time his business relations with Sims commenced he had already illegally appropriated $20,000 of the bank's money in speculations with which neither Sims nor Gibert & Clay had any connection, and that these later and larger speculations of his were carried to a greater extent, with a view, if possible to recoup himself for his past losses. The connection of Sims with these cotton future ventures was brought

about by the solicitation of Chisholm himself, and this connection extended no further than acting as a broker for the purpose of enabling Chisholm to make the contracts into which he desired to enter.

The benefit to inure to Gibert & Clay from these contracts was limited to the brokerage commissions for the same, to which they would be entitled, while the possible result of the same as carried on involved a liability on their part entirely out of all proportion to those commissions. It is highly improbable that they would have been willing to have assumed such a responsibility, had they really been aware of the actual situation. Self-interest should certainly have dictated a greater prudence by them in their dealings with Chisholm than was exercised; but the plaintiff could not reasonably expect or call upon the firm to be more prudent for the purpose of protecting the bank than its own officers were for guarding its interests.

No affirmative legal obligation was imposed upon the defendants to do this. Plaintiff has suffered great loss at the hands of Chisholm; but it cannot visit this loss upon defendants, who were only incidentally connected with him, and ignore its own disregard of ordinary and due precautions towards securing the faithful performance by Chisholm of his official duties.

The superior officers of the bank substantially withdrew all check upon Chisholm in dealing with the moneys belonging to it and placed in his possession, making it possible for him to feloniously appropriate them for his own use, not only at its expense, but (should the theory advanced by plaintiff in this case be adopted) at the expense of the public. Plaintiff reproaches defendants, or rather Sims, for his blind confidence in Chisholm; this blind confidence going so far as to lead justly, in its opinion, to the conclusion of complicity in his illegal acts. It leaves out of sight its own blind confidence in its paying teller. This confidence was entirely misplaced, viewed from the standpoint of regard for the interests of its stockholders. The bank itself placed Chisholm in the position which enabled him to abstract the moneys and furnished him with the opportunity for doing so. Its own negligence was the direct cause of after consequences. Plaintiff lays great stress upon Chisholm's paying the margins which were needed for carrying out the cotton contract over the counter of the paying teller to Hayes, the cashier of the Birmingham branch of defendant's firm; but if Chisholm was acting, as he represented himself to be, as the agent of a depositor in the bank, there was every reason for Sims and Hayes to believe, if their attention had been drawn at all to that fact, that the paying teller had at that time in his possession a check of that depositor on the bank for the amount of the margins called for, which justified the payment by him of the margins.

There was no reason for their supposing that that check would not be charged up against the depositor on the books in regular course of business. If the paying teller had such a check in his possession, the counter of the teller was the proper place for its payment. The fact that the money which was paid out upon the check was in bundles marked with the name of the paying teller's department upon them had, in our opinion, no significance as indicating wrongdoing on the part of the paying teller. All moneys paid over the counter are supposed and expected to be moneys of the bank, and the fact that they were contained in bundles merely indicated that the amounts therein contained had been previously ascertained by proper counting.

We think the law applicable to this case is correctly announced in Merchants' Loan & Trust Co. v. Lamson, 90 Ill. App. 18.

The syllabus of that case declares that:

"When money transferred to an honest taker has been obtained through a felony by the one transferring it, the honest taker, who receives it without knowledge of the felony and in due course of business, acquires a good title to it as against the one from whom it was stolen.

"Bad faith will alone defeat the right of the taker. Mere ground of suspicion of defect of title, or knowledge of circumstances which would excite suspicion in the mind of a prudent man, or gross negligence on the part of the taker, will not defeat his title. Bad faith alone will defeat the right, of the taker, without knowledge. The test is honesty and good faith, not diligence."

The facts of that case closely resemble those of the case now before the court. It was an action brought by a banking house to recover money alleged to have been wrongfully taken from it by one of its receiving tellers and paid by him to the defendant in the case for losses in speculative deals and trades in grain, etc., through defendants, as brokers, upon the New York Stock Exchange and on the Board of Trade of the city of Chicago.

The judgment of the lower court was against the plaintiff, and on appeal the judgment was affirmed.

We see no good reason for reversing the judgment appealed from.

It is hereby affirmed.