## THORN & MAGINNIS ET AL. *v.* WALLACE.

### [74 South. 610, Division B.]

1. GAMING. *Embezzled funds. Recovery by bank.*
   There is no statute in this state giving a bank the right to sue for and recover losses sustained by its cashier in gambling on "futures."

2. GAMING. *Recovery of funds. Sufficiency of petition.*
   In a suit by the receiver of a bank against a broker, for losses sustained by its cashier in gambling on "futures," which losses were paid to the broker, the bill must expressly charge that the money was received by the broker with knowledge that it was stolen.

3. SAME.
   In such case the bill of complainant should not be bottomed upon mere suspicion or circumstances that would create a suspicion, there should be clear and positive averments of knowledge and bad faith; notice by implication is not sufficient; money passes by delivering and any one trading with such cashier had the right to accept his money without an inquiry as to whether it was borrowed or stolen.

APPEAL from the chancery court of Wilkinson county. HON. R. W. CUTRER, Chancellor.

Suit by D. H. Wallace, receiver, against Thorn & Maginnis and others. From a decree overruling a demurrer to the bill, defendants appeal.

The facts are fully stated in the opinion of the court.

*Mayes, Wells, May & Sanders,* for appellant.

The brief of counsel for appellee is a concession that the position which we take in our original brief, if this is a suit to recover property lost in gambling, is unanswerable. Under the bill of complaint this suit was brought under our gambling statutes and based upon the right to bring the suit on the statutes which allow suits to be brought to recover money lost in gaming.

Where a right of action is given by the statute, the right is exclusive, and the method provided by the statute must be pursued. If this suit cannot be prosecuted under this statute, it cannot be prosecuted at all.

Counsel for appellee undertakes to shift the basis of the suit, and now asserts that it is a suit brought to recover stolen property. This is a change in front since the suit was decided in the trial court. We have, fully argued the case on the theory that it is a suit brought under our statute to recover money lost in gambling, and since counsel makes no attempt to answer that brief, our reply will be confined to the new matters argued in the reply brief. We need not cite authorities to show that all the pleadings are to be construed most strongly against the pleader. We think this rule is so firmly imbeded into the rules of practice in this state that it shuts out argument. However, authorities to this effect will be found in the cases of: *Powell* v. *Stowers,* 47 Miss. 577; *Beckman* v. *Ga. Pac. Ry. Co.,* 956; *Romanski* v. *Thompson,* 11 So. 828; *Clary* v. *Lowry,* 51 Miss. 879; *McCerrin* v. *A. & V. Ry. Co.,* 72 Miss. 1013.

We contend that the case made by appellee in his brief is not the case made by the complainant filed in the chancery court. The case made by the bill of complaint is based on the fact that Thorn & Maginnis were dealers in Cotton futures. It alleges ''that during the years 1912, 1911 and 1910, and prior thereto, and since then and now'' appellants were and are dealing in cotton future. Why this allegation as to the business in which Thorn & Maginnis were engaged, unless it was sought to recover from them on this account? The complaint then further alleges that MacLeod, during the above years, was the cashier and trusted employee of the Citizens Bank of Wilkinson county, and that on account of this employment he was empowered to draw checks on the bank, and to withdraw funds from the bank for its use. There is no charge in the bill that

Thorn & Maginnis knew, if such is the fact, that Mac-Leod had embezzled the funds of the bank, or any other commodity, knowing at the time that the money they received had been embezzled. Even if counsel is correct in his assertion that this is a suit to recover stolen money, it must be averred that the money was stolen, and that the party to whom it was paid, knew it was stolen. We will contend, however, that under no theory can this suit be maintained. Money is not a character of property which may be followed into the hands of third parties. The title of money passes by delivery unless the party taking it knew when he took it that it was stolen money. The bill avers that Thorn & Maginnis knew that MacLeod was cashier of the bank; knew his financial condition; and knew that he had no property except what was paid to him as a salary. In other words, under this allegation, the bill assumes that persons dealing with MacLeod were required to presume that he had stolen the money. The legal presumption is just the contrary of this. Crime is never to be presumed where the act is consistent with innocence. This bill shows that the whole theory proceeds upon the idea that this money can be recovered because it was lost in dealing in cotton futures.

Counsel cites the case of *Grouch* v. *Hazelhurst Lbr. Co.*, 16 So. 496, but this case has no application here. Grouch was in charge of the Hazelhurst Lumber Co. and while in charge, bought two lots in the city of Jackson and gave them to his wife. The proof showed that the lands were paid for by funds which belonged to the Hazelhurst Lumber Company. Subsequently Grouch embezzled several thousand dollars from the Hazelhurst Lumber Company, and the Lumber Company endeavored to set aside this conveyance, claiming that the putting of its funds in this property created a resulting trust in favor of the Lumber Company, and the court held that where an employee takes money or property of his employer, without being entitled to it,

and uses it to buy a lot and build a house thereon, a resulting trust will be declared in favor of the employer. In the case on trial it is not averred that one dime of the money which it is alleged that MacLeod misused, went to the purchase of the property which is attached, and there can, therefore, be no resulting trust in this property, because none of the trust funds can be traced into it.

We have no fault to find with the citation of authority found in counsel's brief from Lawson on Contracts, section 49 and Pomeroy on Equity Jurisprudence, section 1047, but these authorities are not in point here, because the only person who could be sued under the authorities which counsel quotes is MacLeod, and not third persons not actually participating in MacLeod's crime. The quotation from Lawson on Contracts merely says that where one person has obtained money of another which he has no right equitably to retain or withhold, as where money has been paid by accident, mistake of fact, duress or fraud, the law creates a promise on his part to pay it over to the rightful owner.'' And to the same effect is the citation from Pomeroy, section 1047.

As already stated in this brief, it is not alleged that Thorn & Maginnis knew when he spent this money with them, that he was using stolen money. It was not enough for them to know what his supposed salary was, nor to suspect that he might be spending more than was paid him as a salary.

Appellee seeks to trace the misapplied trust funds into the hands of Thorn & Maginnis. They seek to subject to this trust fund, lands which belong to Thorn & Maginnis, but they do not allege, nor show, that one dollar of the purchase price of this land was paid for with the funds which they claim MacLeod embezzled.

In 39 Cyc. 530, it is stated that: ''The trust fund or property may be followed and recovered in equity, as against the trustee or a person with notice either in

its original or substituted form, when and only when, it can be clearly traced and identified, in some specific fund or property."

They do not aver, anywhere, that any of MacLeod's misapplied funds went into this property.

Counsel cites the cases of *Issacs* v. *Hermann & Moss,* 49 Miss. 449; and the Alabama cases of *Barnett* v. *Warren,* 2 So. 457; and *Farmers Bank & Trust Co.* v. *Shut & Keihn,* 68 So. 363. The Issacs case holds that if one procure another, to sell goods to an insolvent, through fraudulent actions, the seller may recover the value of the goods from him who procured the sale. And the other two cases hold that an action for money had and received, is an equitable action, and lies whenever one person has money which belongs to another. We do not take issue with the decisions above referred to, but we dispute their application to this case. There is no way of identifying money. The title to money passes by delivery. If this were not true, it would stagnate and destroy commercial transactions. Money received in the ordinary course of proceedings with individuals cannot be recovered back, nor does it create any liability on a third party if the person from whom the money is received obtained it unjustly, unless the party who takes the money actually knows that the particular money which he receives is stolen money, and then he becomes a participator in the crime. No such allegation is made in this bill, and this demurrer should be sustained. This suit was begun on the idea that it was a gambling transaction, and on that idea the money could be recovered. Counsel have shifted their base and now undertake to convert this bill of complaint into a suit against Thorn & Maginnis, for receiving stolen money, but the bill of complaint makes out no such case.

*Ackland H. Jones* and *J. McC. Martin,* for appellee.

This case is analogous to an action for money had and received. "Where one person has obtained money of another which he has not a right equitably to retain or withhold, as where money has been paid by accident, mistake of fact, duress or fraud, the law creates a promise on his part to pay it over to the rightful owner." Laws on Contracts, sec. 49; Pomeroy Equity Jurisprudence, sec. 1047.

It is settled law that if one procures another to sell goods to an insolvent, through his fraudulent actions that the seller may recover the value of the goods from him who procured the sale. *Issacs* v. *Hermann & Moss,* 49 Miss. 449. To sustain such an action for money had and received, it is only necessary to show that the defendant has obtaineed possession of money, or received something as money, which *ex aequo et bono,* he ought to refund. 2 Enc. Pleading and Practice, 1016.

"An action for money had and received is an equitable action, and lies whenever one person has money which *ex aequo et bono* belongs to another. *Barnett* v. *Warren* (Ala.), 2 So. 457; See also *Farmers Bank and Trust Co.* v. *Shut & Keihn* (Ala.), 68 So. 363.

The bill charges and the demurrer admits these facts: MacLeod was cashier of the Citizens Bank of Wilkinson county and was empowered to withdraw the funds of the bank only for the use of the bank; that the defendant knew his financial condition and knew he had no means other than his monthly salary; that with such knowledge the defendants induced MacLeod to speculate with them; that he, MacLeod, embezzled the funds of the bank; that the defendants, by the felony of MacLeod, and after full knowledge of his inability to pay the money out of his own means, received from him, in the utmost bad faith the sum of six thousand five hundred dollars.

Can the receiver sue? Here he has been authorized by the court appointing him, the court of which he is the arm. What is his right to sue?

"A receiver succeeds to all rights of action belonging to the party over whose property he has been appointed, and occupies, in general, substantially the same relation which was occupied by the original parties. Contract relations and rights of action remain unchanged and may be enforced by the receiver by appropriate remedies." 23 Am. & Eng. Enc. Law (2 Ed.)

The money received by these appellants was owned, and was the property of the Citizens Bank of Wilkinson county; the receiver now stands in the shoes of that bank so far as this recovery is concerned; the right of action against Thorn & Maginnis and S. Blumenthal remained unchanged by the appointment of this receiver, and it is his duty as well as his right, to prosecute this suit.

To summarize it is enough to say that this action is for six thousand five hundred dollars belonging to the Citizens Bank of Wilkinson county, paid to and received by them through the felony of the cashier of the bank after they had every reason to know that he had, that he must in the nature of things, have stolen it.

It is not a suit for the recovery of money lost in cotton "futures" but a suit for money stolen, delivered to the defendants, with notice that it was stolen, and then, after such notice and knowledge, lost in cotton "futures."

The decree of the chancellor was correct; no error was committed in overruling the demurrer, and the cause should be affirmed and remanded for a trial on the facts.

STEVENS, J., delivered the opinion of the court.

Appellants were made defendants to a bill exhibited by appellee as receiver of the Citizens' Bank of Wil-

kinson County, the estate of which is being administered by the chancery court. They prosecute this appeal from a decree overruling their demurrer to the bill. The bill of complaint charges that Thorn & Maginnis is a partnership composed of C. D. Thorn and W. T. Maginnis, nonresidents of the state of Mississippi, domiciled in the city of New Orleans and there engaged in the general business of buying and selling cotton futures; that the defendant S. Blumenthall is a resident citizen of Wilkinson county and is the agent or employee of said partnership, and as such accepts orders or contracts for futures and represents generally the interests of Thorn and Maginnis in said county of Wilkinson. The complainant charges that one G. C. MacLeod, during the years 1910, 1911, and 1912, was the cashier of the said Citizens' Bank, and while such cashier unlawfully abstracted the funds of the bank to the amount of six thousand five hundred dollars, and invested the money so abstracted in cotton futures; that the individual members of said cotton brokerage firm, as well as their agent Blumenthall, induced and permitted MacLeod to speculate at cotton futures, and received from MacLeod the money unlawfully abstracted from the funds of the bank; that this money was received in the buying and selling of futures; that it was received with knowledge that MacLeod, the cashier, was a man without visible property, of limited means, and dependent upon his salary for a livelihood. The bill further charges that the said sum of six thousand five hundred dollars was received in various amounts and at various times, shown by a schedule to be filed later as an exhibit to the bill. The schedule referred to does not appear in the record of the appeal. The strongest allegation in the bill as to the knowledge which the defendants had of the cashier's peculations is as follows:

"That the said sum of six thousand five hundred dollars was paid to and received by said defendants

through the felony of the said MacLeod after they had every reason to know and be informed of his inability to pay said sums of his own means and money, and was actually received by the said Thorn & Maginnis and the members thereof with the utmost bad faith.''

One D. W. Huff is made a party defendant on the theory that he was a customer of the said partnership of Thorn & Maginnis, and that he is indebted to the said firm on account of his dealings in futures. L. H. Dinkins and Mrs. E. J. Blumenthall were made parties defendant, on the theory that they hold the legal title to certain real estate in said county as trustees of Thorn and Maginnis and their agent Blumenthall. The prayer of the bill is for a decree against Thorn & Maginnis and their agent, S. Blumenthall, for the total amount of moneys received by them from G. C. Mac-Leod, and for an attachment in chancery, to be levied upon their said real estate in Mississippi. A general demurrer was filed by all of the defendants, and also the separate demurrer of Thorn and Maginnis and D. W. Huff.

While it is true that the receiver succeeds to the right and title of the Citizens' Bank, no statute of our state gives to the bank the right to sue for and recover losses sustained by its cashier, MacLeod, in gambling on ''futures.'' Neither MacLeod nor the members of his family are parties to this litigation. In fact, it is frankly conceded by counsel for appellee that this bill cannot be maintained upon the theory that the bank has a right to recover any money lost in gambling and in the buying of futures. It is contended, however, that the receiver has the right to recover moneys unlawfully embezzled or abstracted by the cashier and received by Thorn & Maginnis with knowledge that the moneys were stolen. The only question now before us is a question of pleading. Does the bill of complaint state a cause of action? We think not. The bill does not charge that either Thorn & Maginnis or their agent,

Blumenthall, had actual knowledge that any of the moneys received by them from MacLeod was the money of the Citizens' Bank, or that it had been stolen from the bank. The bill does charge that the defendants had every reason to believe that MacLeod was unable to repay the said sums of money out of his own moneys, and it does charge that the money was "received with the utmost bad faith." The bill does not state definitely and with precision that the defendants had actual knowledge of MacLeod's felony, and averments of this character, in our judgment, are necessary before the complainant has presented a good bill. It is to be noted that the complainant does not particularize as to the dates or circumstances under which the moneys were received. It does not show whether MacLeod paid these moneys directly to Blumenthall or transmitted them to Thorn & Maginnis at New Orleans. It does not charge whether the moneys were paid in legal tender, by cashier's checks, or by exchange. It does not present a case where the cashier has undertaken to pay his individual debts with the bank's paper, or in such way as to disclose upon its face the bank's ownership. It does not even charge that the defendants had actual knowledge that any of the moneys were stolen. We do not consider it our duty to point out or decide just what averments will be necessary. All we need to decide now is that the complainant has not presented a good bill. Certain it is that no right to recover is shown unless the bill expressly charges that the money was received with knowledge that it was stolen.

The fact that the defendants are general dealers in cotton futures is a mere incident, and can have little direct bearing upon this case. This fact may be a circumstance tending to prove bad faith on the part of MacLeod as well as the defendants themselves. But the bill of complaint should not be bottomed upon mere suspicion or circumstances that would create a suspicion.

There should be clear and positive averments of knowledge and bad faith; notice by implication is not sufficient. Money passes by delivery, and any one trading with MacLeod had the right to accept his money without an inquiry as to whether it was borrowed or stolen. A fair discussion of this exact question will be found in *First National Bank* v. *Gibert,* 123 La. 845, 49 So. 593, 25 L. R. A. (N. S.) 631, 131 Am. St. Rep. 382, and especially the case not€in L. R. A.

The decree of the learned chancellor will be reversed, the general demurrer sustained, and the cause remanded, with leave to appellee to amend generally the bill of complaint within thirty days after receipt of mandate by the clerk of the court below.

*Reversed and remanded.*