## AMERICAN SURETY CO. OF NEW YORK v. ROBINSON et al.

### No. 6359.

Circuit Court of Appeals, Fifth Circuit.

Oct. 29, 1931.

T. Baldwin Martin and Cubbedge Snow, both of Macon, Ga., for appellant.

J. T. Goree and H. G. Rawls, both of Donalsonville, Ga., opposed.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

American Surety Company, as surety for the treasurer of a Georgia county, was required to pay his defalcation, and brought a bill in equity for subrogation to the right of the county to hold its county commissioners individually liable for the loss. Motions to dismiss the bill were granted, and the surety company appeals.

The bill sets up that it was the duty of the commissioners under the law to audit each claim presented against the county, and, if allowed, to register it and issue an order on the county treasurer payable to the claimant. This the commissioners neglected to do, but signed a number of orders, blank as to payee and amount, for the treasurer to fill in for the claimants. The treasurer from time to time filled out some of the orders to fictitious persons for sums aggregating several thousand dollars, forging the indorsements of the payees, took the money himself, and used the false orders as vouchers to balance his account. When detected, the surety company, as surety on his bond, paid the execution issued against him and it. It is not charged that the commissioners knew of or connived at the thefts, or got any of the money, but only that they were grossly neglectful in giving opportunity for dishonesty.

It is denied by the appellees that the county had any cause of action against any of them individually, it being asserted that

their function was judicial and discretionary, rather than ministerial; that the acts complained of were the acts of the board of commissioners rather than of any individual; and that the negligence alleged was not the proximate cause of the county's loss, but rather the acts of the treasurer, he having merely misused their confidence in him to cover up his conversions. We do not find it necessary to examine these contentions, because, if it be supposed that the county could have held the commissioners liable as for negligence, since there are no allegations that they knew of the treasurer's defalcations and connived at them or directly participated in them, there can be no subrogation of the surety. Subrogation is an invention of equity whereby through a supposed succession to the legal rights of another a loss is put ultimately on that one of the parties before the court on whom it ought equitably to fall. It is freely applied in favor of a surety who discharges his principal's obligation, or makes good his default. It operates to enable the surety to enforce all his principal's rights of reimbursement against others, and all the rights of the creditor against the principal and all securities held for the obligation. By analogy to the principle of insurance law whereby an insurer paying a loss may go against even a tort feasor who caused it, the surety may often be subrogated to the independent rights of action of the creditor against third parties. But this can never happen when such third party, if held liable in the first instance, would have had recourse over on the principal and his surety. The existence of such a right of recourse against the surety necessarily marks the surety's equity as inferior and subordinate. Such is the present case. The treasurer's bond bound him and the surety company "for the faithful discharge of all the duties of the office of county treasurer during the time he continues therein." Although the bond runs nominally to the ordinary of the county and his successors in office, Georgia Civil Code of 1910, § 291, of force when the bond was executed, expressly provides: "Every official bond executed under this Code is obligatory on the principal and sureties thereon * * * (4) For the use and benefit of every person who is injured, as well by any wrongful act committed under color of his office as by his failure to perform, or by the improper or neglectful performance of those duties imposed by law." Georgia Civil Code, § 12,

is to the same effect. If, therefore, the county had held the commissioners liable for the money misappropriated, they, being thus injured by the official misconduct of the treasurer in paying to himself orders which he well knew were false, having himself forged them, would have had a right of action on the bond as obligees thereof. The surety could not have defended on account of mere neglect on the part of the commissioners which made it easier for the treasurer to hide his default, they not knowing of it and not directly participating in the acts of defalcation. See 25 C. J. Fidelity Insurance, § 11; 46 C. J. Officers, § 412. This is illustrated by the well-considered case of Williams v. Lyman (C. C. A.) 88 F. 237. There a deputy collector of internal revenue defaulted, and the collector, having to make the loss good, sued the deputy collector and his bondsmen. By the laws of the United States and the regulations of the Treasury Department, the collector should have closely supervised his deputy, and required detailed and frequent accounting from him which would have reduced the opportunity for and the amount of his defalcations. These precautions which had been neglected were held to be duties due to the United States, and not to the surety, who, without any stipulations thereabout, had broadly guaranteed the faithfulness and honesty of the deputy, and the surety was held liable.

Substantially identical with the case at bar is American Bonding Co. v. Welts (C. C. A.) 193 F. 978, 980. Subrogation was there denied the surety who was appellant, the court saying: "From the averments of the bills in these cases it is clear that the proximate cause of the county's loss and of the resultant loss to the appellant was the malfeasance of the auditor, for whose official honesty and faithfulness the appellant had bound itself. To permit it to recoup a loss so sustained by means of subrogation out of those for whose benefit, in part, the surety company assumed the obligation, would be to put that doctrine to a use wholly foreign to its nature." National Surety Co. v. Savings Bank (C. C. A.) 156 F. 21, 14 L. R. A. (N. S.) 155, 13 Ann. Cas. 421, is to the contrary, the court taking a shadowy distinction between the acts of the county auditor there involved in forging the orders as being official acts, but his acts in using them to the detriment of the county as being nonofficial and personal. There was a strong dissent, and in the same case

on a later appeal, with but slight difference in the facts, a contrary conclusion was finally reached, put on the absence of negligence on the part of the bank against which subrogation was sought. National Surety Co. v. Arosin (C. C. A.) 198 F. 605. But, as above stated, we think it is not negligence, but knowledge of or participation in the acts of defalcation, that would protect the surety from liability and entitle him to subrogation. Nor can a distinction between official and personal acts of the treasurer in the case at bar be taken because the act which directly caused the loss to the county was not the forgery of the orders but the paying of them as treasurer, and that act was unquestionably official. These considerations also reconcile the other case relied on by appellant of American National Bank v. Fidelity & Deposit Co., 129 Ga. 126, 58 S. E. 867, 12 Ann. Cas. 666. In it a bank was intrusted with a court fund on the express condition that it was to pay it out on the checks of the receiver only when countersigned by the judge. It paid it to the receiver without countersignature, and he converted it, and his surety was allowed subrogation against the bank because it directly participated in the misapplication by knowingly and wrongfully paying out the money.

Judgment affirmed.