**AMERICAN SURETY CO. OF NEW YORK v. BACHE et al.**

No. 13138.

Court of Civil Appeals of Texas. Fort Worth.

April 5, 1935.

Rehearing Denied May 3, 1935.

Bartlett, Thornton & Montgomery, of Dallas, for appellant.

Mayer & Rowe and S. C. Rowe, all of Fort Worth, for appellees.

DUNKLIN, Chief Justice.

H. O. Kincaid was employed by the First National Bank of Fort Worth, Tex., as a teller in its loan and discount department and charged with the duty of handling stock transactions with customers of the bank under the direction and subject to the approval of an official of the bank. During the years 1929 and 1930 he engaged in stock speculations on the New York market, operating in part on money which he had wrongfully abstracted from the bank. His dealings were with the partnership firm of J. S. Bache & Co., as stockbrokers, whose home office and principal place of business was in the city of New York, but having a branch office in the city of Fort Worth, through which his transactions were conducted. On the 29th day of October, 1930, the bank discovered the defalcations of Kincaid and he was discharged from its service, and following his discharge he was convicted of the offense and sentenced to the penitentiary. His defalcations with the bank aggregated $31,342.22 over and above $12,129.50 which the bank recovered from certain of his assets after his discharge. The American Surety Company of New York was surety for Kincaid on a fidelity bond which it had given the bank, and in recognition of its liability on that bond it paid over to the bank the amount of its said losses.

The money abstracted from the bank was used by Kincaid in purchasing stock on the New York market through the Fort Worth representatives of J. S. Bache & Co., and paying therefor by giving that firm credit on the books of the bank for the purchase price. Some of his purchases were made in his own name, and some in fictitious names used for his own convenience.

The American Surety Company instituted this suit against J. S. Bache & Co., to recover the money paid to the bank to cover its losses of funds so embezzled and used by Kincaid in the purchase of stock, upon the theory of subrogation to the alleged right of the bank to recover its losses from the defendants in the first instance; that right of subrogation having been expressly assigned to plaintiff by the bank by an instrument of writing. The method employed by Kincaid, as recited above, was alleged in plaintiff's pleading, with further allegations that all the transactions in the names of fictitious persons were handled by Kincaid personally, notwithstanding their purported residence addresses were certain streets and house numbers in the city of Fort Worth, and other facts and circumstances brought out in the evidence and hereinafter noted; all of which were alleged as showing that in their dealings with Kincaid the defendants had actual knowledge that he was using money belonging to the bank, which he had embezzled.

At the conclusion of the evidence the trial court instructed a verdict for the defendants, and plaintiff has appealed from a judgment in accordance therewith.

Appellant does not point out any evidence of actual knowledge of defendants' Fort Worth representatives of Kincaid's defalcations, but submits these propositions:

"Knowledge on the part of appellees' agents of facts and circumstances sufficient to put a person of reasonable prudence on inquiry, where such inquiry if pursued with reasonable diligence would have disclosed that Kincaid was wrongfully using the bank's funds in his individual stock transactions, was equivalent in law to knowledge on the part of appellees of such misappropriations, and made them liable for as much of said funds as they received."

"The evidence was sufficient to raise the issue whether appellees had actual knowledge that Kincaid was misappropriating the funds of the First National Bank of Fort Worth and using the same with which to pay them for the stocks purchased in his individual transactions."

Many authorities are cited announcing the general rule that one is chargeable with notice of a fact of which he is ignorant if some other fact or facts are brought to his knowledge sufficient to excite inquiry by a person of ordinary prudence and if pursued would have led to actual knowledge of the main fact.

The principal facts and circumstances in evidence relied on to support this assignment were Kincaid's payments for the stock purchased by him by giving defendants credit for the amount of purchases on the books of the bank, evidenced by deposit slips delivered to defendants, at the time, instead of by checks drawn on the bank in defendants' favor; making purchases of stock in fictitious names; entering in defendants' books the names and street addresses in Fort Worth of those fictitious persons, and accepting from Kincaid all confirmation of transactions in those names; depositions of Kincaid that McMortie and Claiborne, defendants' representatives in Fort Worth, knew he was trading in fictitious names; that during the time he was trading with

defendants he became short in his account with the bank in the sum .of $31,000 and thereafter informed McMortie, one of de-'fendants' representatives in Fort Worth, of that fact; that he and McMortie were friends and often played golf together, etc.

■ "Notice" of the character referred to in the general rule invoked by appellant means implied or imputed notice—sometimes termed "constructive notice"—and has a different legal significance from "actual knowledge." And the rule of implied notice of facts which may be discovered by inquiry is not applicable unless the party charged thereunder is under duty to follow up such suggested inquiry. 31 Tex. Jur. § 3, p. 57; State v. National Bank, 116 Tex. 214, 288 S. W. 435, 20 R. C. L. pp. 340–351.

■ There was an utter lack of evidence to show that when Kincaid purchased and paid for the stocks in question the defendants had actual knowledge that he was using money he had feloniously abstracted from the bank. We believe it well settled by the authorities that in the absence of such actual knowledge defendants were not liable to the plaintiff, as assignee of the bank, for the embezzled funds. We believe the rule that he who trusts most must suffer most has proper application here.

In Holly v. Domestic & Foreign Missionary Society, 180 U. S. 284, 21 S. Ct. 395, 398, 45 L. Ed. 531, the court quotes with approval from Stephens v. Board of Education of City of Brooklyn, 79 N. Y. 183, 35 Am. Rep. 511, as follows: "It is absolutely necessary for practical business transactions that the payee of money in due course of business shall not be put upon inquiry at his peril as to the title of the paper. Money has no earmark. The purchaser of a chattel or a chose in action may by inquiry in most cases ascertain the right of the persons from whom he takes the title. But it is generally impracticable to trace the source from which the possessor of money has derived it. It would introduce great confusion into commercial dealings if the creditor who receives money in payment of a debt is subject to the risk of accounting therefor to a third person who may be able to show that the debtor obtained it from him by felony or fraud. The law wisely, from considerations of public policy and convenience, and to give security and certainty to business transactions, adjudges that the possession of money vests a title in the holder as to third persons dealing with him and receiving it in due course of busi-

ness and in good faith upon a valid consideration. If the consideration is good between the parties, it is good as to all the world. 'Money,' said Lord Mansfield in Miller v. Race, 4 Burr. 452, 'shall never be followed into the hands of a person who bona fide took it in the course of currency and in the way of his business.' "

The court quotes further from other opinions to a like effect. And the following authorities are in full accord with those announcements: Kidder v. Hall, 113 Tex. 49, 251 S. W. 497; First Nat. Bank v. Gibert & Clay, 123 La. 845, 49 So. 593, 25 L. R. A. (N. S.) 631, 131 Am. St. Rep. 382; Texas State Bank of Walnut Springs v. First Nat. Bank of Meridian (Tex. Civ. App.) 168 S. W. 504, writ of error dismissed; Case v. Hammond Packing Co., 105 Mo. App. 168, 79 S. W. 732 (Kansas City Court of Appeals); Glasgow v. Nicholls, 124 Wash. 281, 214 P. 165, 35 A. L. R. 419, 430, quoting from Thorn & Maginnis v. Wallace, 113 Miss. 649, 74 So. 610; American Surety Co. of New York v. Robinson (C. C. A.) 53 F.(2d) 22.

If defendants had had actual knowledge that Kincaid was using funds of the bank which he had embezzled and with such knowledge had accepted such funds in payment for his purchases, then a case of a conscious participation in the felony would have been made out. But in the absence of such knowledge, the doctrine of implied notice, which is based on the theory of negligence of the defendants in failing to make inquiry as to the ownership of the money used by Kincaid, has no application. Moreover, plaintiff did not invoke the doctrine of negligence as a ground for recovery; and the evidence showed conclusively that defendants acted in perfect good faith in the transactions in question.

■ And we will add that notwithstanding the trial court sustained an exception to one paragraph in plaintiff's petition, asserting as a conclusion of law that the facts alleged in other paragraphs of plaintiff's pleadings were sufficient to excite inquiry which, if pursued, would have disclosed to defendants that Kincaid was speculating with money which he was wrongfully abstracting from the bank, yet plaintiff introduced evidence to prove those facts and all assignments of error are based thereon. Hence the error, if any, in that ruling was harmless, at all events.

The judgment of the trial court is affirmed.