**EXXON CORPORATION, formerly Standard Oil Company (New Jersey), Appellant,**

v.

**Koven RAETZER, Appellee.**

**No. 1045.**

Court of Civil Appeals of Texas, Corpus Christi.

Jan. 30, 1976.

Rehearing Denied Feb. 26, 1976.

C. O. Ryan, Kelley, Ryan & Merrill, Houston, for appellant.

Bryan W. Scott, Urban, Coolidge, Pennington & Scott, Houston, for appellee.

## OPINION

BISSETT, Justice.

This is an appeal by Exxon Corporation from a judgment which awarded Koven Raetzer the fair market value at the time of trial of 300 shares of capital stock of Exxon Corporation, the successor corporation to Standard Oil Company of New Jersey. Trial was to the court without a jury.

Suit was filed on October 6, 1971. Koven Raetzer, plaintiff, in his original petition, his trial pleading, among other allegations, alleged: that he, prior to October 7, 1969 and also at the time of trial, was the registered owner of 325 shares of capital stock of Standard Oil of New Jersey, which was evidenced by four certificates, one for 25 shares and three for 100 shares each; that on or about October 6, 1969, the 25 shares were transferred without his authority; that on or about August 28, 1970, the 300 shares were transferred without his authority; and that his purported signature on the back of each certificate was not his signature, and that those signatures were forgeries.

Exxon, in its first amended original answer, its trial pleading, denied generally the allegations contained in the plaintiff's original petition. It also pled the provisions of Tex.Bus. & Comm.Code Ann. § 8.405(a) (1968) as a defense to the action brought against it, and asserted that Raetzer, by the express terms of that statute, was precluded from asserting any claim against it.

Trial commenced on May 28, 1975. Plaintiff, after answering ready but before the presentation of any evidence, took a nonsuit as to his claim with respect to the 25 shares of capital stock. Judgment in Raetzer's favor for $24,937.50, plus interest thereon at the rate of 6% per annum from date of judgment until paid, was signed on June 18, 1975. Findings of fact and conclusions of law were made and filed by the trial court.

It is undisputed that Raetzer, prior to October 7, 1969, was the registered owner of 325 shares of stock of Standard Oil of New Jersey; that on October 7, 1969, the certificate evidencing his ownership of 25 shares was cancelled and the stock was transferred; and that on August 28, 1970, three certificates, each for 100 shares, were cancelled and the 300 shares were transferred on that same day. It is uncontroverted that sometime during the latter part of September, 1969, Raetzer learned that the 325 shares of Standard Oil Company of New Jersey stock (among other stocks and securities) were missing from his safety deposit box. Thereafter, in October, 1969, he contacted his attorney, Mr. Fred Dailey, concerning the disappearance of the securities from the box. It is also undisputed that the stock was transferred by Exxon's predecessor, Standard Oil Company of New Jersey, without authorization from Raetzer and upon his forged signatures.

The first communication by Raetzer to the issuer with respect to the missing 325 shares of stock was by a letter, dated July 22, 1970, written by Mr. Dailey, Raetzer's attorney, to Standard Oil Company of New Jersey. That letter, excepting only the date, the addressee, and the signature, is, in words and figures, as follows:

"Gentlemen:

The undersigned attorney, for the firm, represents Mr. Koven Raetzer. In the past few months irregularities in the handling of Mr. Raetzer's investments have been discovered.

In order to determine whether Mr. Raetzer's interest represented by Three Hundred Twenty-five (325) shares of capital stock in your corporation has been affected, please advise the undersigned in writing whether you show any change in ownership or status."

Receipt of the letter was acknowledged by Morgan Guaranty Trust Company of New York, the stock transfer agent of Standard Oil Company of New Jersey, hereinafter called "the stock transfer agent", by memorandum numbered 10T–34, dated July 28, 1970. The stock transfer agent, by letter dated August 3, 1970, further advised Dailey:

"With further reference to your letter of July 22, 1970, an examination of the stock records shows 300 shares registered and outstanding in the name of Koven Raetzer. On October 7, 1969, certificate # AF174414, representing 25 shares, was cancelled, leaving a balance of 300 shares in the account."

The trial court found in Finding of Fact III that the letter of July 22, 1970 from Dailey to Standard Oil Company of New Jersey was sufficient notice to advise the issuer of the stock that it had been lost, apparently destroyed or wrongfully taken. In Finding of Fact V, the trial court found that said letter was sufficient to put the issuer on inquiry as to whether or not the stock in question had been wrongfully taken, apparently destroyed or lost.

Exxon, in points 1 and 4, contends that there is "no evidence" to support Findings of Fact III and V. It further contends, in point 2, that the undisputed evidence compelled a finding as a matter of law that Raetzer failed to notify it that the stock certificates in question had been lost, destroyed or wrongfully taken before the stock represented by such certificates was transferred.

As a general rule, an issuer of corporate stock who registers the transfer of a security pursuant to an unauthorized signature (such as a forgery) of the true owner is subject to liability for improper registration. Tex.Bus. & Comm.Code Ann. § 8.311 (1968). However, an exception to that general rule is found in Tex.Bus. & Comm.Code Ann. § 8.405(a) (1968), which provides:

"Where a security has been lost, apparently destroyed or wrongfully taken and the owner fails to notify the issuer of that fact within a reasonable time after he has notice of it and the issuer registers a transfer of the security before receiving such a notification, the owner is precluded from asserting against the issuer any claim for registering the transfer under the preceding section or any claim to a new security under this section."

■ Where a point of error asserts that there is no evidence to support a finding of fact by the trial court, an appellate court must consider only the evidence and the inferences tending to support the finding, and must disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup.1965). In discussing the quantity and quality of the evidence where a "no evidence" point is presented, Justice Calvert, in 38 Tex.L.Rev. 359, 362 (1960), said:

" 'No evidence' points must, and may only, be sustained when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to

the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact."

In the case at bar, the situations set out in (b) and (d) of the article are not involved. The "vital fact" in issue is whether the July 22, 1970 letter constituted notice to Standard Oil Company of New Jersey that the 300 shares had been "lost, apparently destroyed or wrongfully taken".

Notice is defined in Tex.Bus. & Comm. Code Ann. § 1.201(25) (1968) as follows:

"(25) A person has 'notice' of a fact when

(A) he has actual knowledge of it; or

(B) he has received a notice or notification of it; or

(C) from all the facts and circumstances known to him at the time in question he has reason to know that it exists. . ."

■ Ordinarily, notice is a question of fact which is to be determined by the trier of facts; it becomes a question of law only when there is no room for ordinary minds to differ as to the proper conclusion to be drawn from the evidence. *O'Ferral v. Coolidge*, 149 Tex. 61, 228 S.W.2d 146 (1950).

■ Notice, in law, is of two kinds, actual and constructive. We are not here concerned with constructive notice. Actual notice may be either express or implied. *Hexter v. Pratt*, 10 S.W.2d 692 (Tex.Comm'n App.1928), cited with approval by our Supreme Court in *Woodward v. Ortiz*, 150 Tex. 75, 237 S.W.2d 286 (1951), held:

". . . In common parlance 'actual notice' generally consists in express information of a fact, but in law the term is more comprehensive. In law whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand, which if pursued by the proper inquiry the full truth might have been ascertained. Means of knowledge *with the duty of using them* are in equity equivalent to knowledge itself. *Where there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual knowledge. . .*" (Emphasis supplied.)

■ Generally speaking, what will amount to implied notice sufficient to affect the party who receives it depends upon the peculiar facts of each case. There can be no general rule which embraces all circumstances that are sufficient to put a party on notice of the existence of a fact, but it is universally recognized by our courts that the fact which is claimed to put a person on notice must be of a nature that would normally excite investigation; mere rumors, vague statements, and circumstances that are dubious or equivocal and do no more than arouse suspicion or create speculation, are not sufficient to constitute actual notice. See 41 Tex.Jur.2d, Notice, § 9 (1963); 58 Am.Jur.2d, Notice, §§ 11, 12, 13 (1971); 66 C.J.S. Notice § 11 (1950).

■ Implied notice is an inference of fact. 58 Am.Jur.2d, Notice, § 5 (1971). But, the rule of implied notice of a fact which could be discovered by inquiry is not applicable unless the party who is sought to be charged with such notice is under a duty to follow up the communication by inquiry. *American Surety Co. of New York v. Bache*, 82 S.W.2d 181 (Tex.Civ.App.—Fort Worth 1935, writ ref'd).

In *Flack v. First National Bank of Dalhart*, 148 Tex. 495, 226 S.W.2d 628 (1950), our Supreme Court said:

" 'Whatever puts a person on inquiry ordinarily amounts in law to notice, *provided inquiry has become a duty* and would lead to knowledge of the facts by the exercise of ordinary diligence and understanding. . .' " (Emphasis supplied).

The rule with respect to the extent of the duty to make inquiry, is stated in 41 Tex. Jur.2d, Notice, § 5 (1963), as follows:

"Although actual notice includes the knowledge of all those facts that a rea-

sonable inquiry would have disclosed, the duty of inquiry extends only to those matters that are fairly suggested by the facts really known; circumstances that may merely arouse suspicion in the mind of a reasonably prudent person are generally regarded as insufficient to charge notice."

It has been held that where the circumstances claimed to be sufficient to charge a person with notice may be equally well referred to some matter other than that with notice of which he is sought to be charged, the circumstances claimed to put a person on inquiry will not be deemed sufficient to charge him with notice. *Houston Oil Co. of Texas v. Griggs,* 181 S.W. 833, 838 (Tex.Civ. App.—Beaumont 1916), affirmed in 213 S.W. 261 (Tex.Comm'n App.1919, judgmt. adopted). It has also been held that statutes regulating the general subject of notice are to be construed most liberally in favor of the party who is affected by the notice. *Phinney v. Langdeau,* 337 S.W.2d 393 (Tex.Civ.App.—Austin 1960, writ ref'd n. r. e.).

■ Applying the statutory definition of "notice" set out in Tex.Bus. & Comm.Code Ann. § 1.201(25) (1968) to the "notice" prescribed by Tex.Bus. & Comm.Code Ann. § 8.405(a) (1968) the issuer of the missing stock certificates must either have actual knowledge of the fact that the stock "has been lost, apparently destroyed or wrongfully taken", or it must be given actual notice, express or implied, of that fact. In the absence of actual knowledge or actual notice of that vital fact within a reasonable time after the stockholder has notice of it and the issuer registers a transfer of the stock before receiving such notice, the stockholder, under the provisions of Tex. Bus. & Comm.Code Ann. § 8.405(a) (1968), is precluded from asserting any claim against the issuer. The burden was on Raetzer to notify Standard Oil Company of New Jersey, or its stock transfer agent, within a reasonable time after the latter part of September, 1969 of the disappearance of the stock.

There is no evidence in this case that Standard Oil Company of New Jersey, or its stock transfer agent, had actual knowledge that the 300 shares of stock, at any time pertinent to this lawsuit, had been lost, apparently destroyed or wrongfully taken. The July 22, 1970 letter did not amount to express notice of the fact. No literal language to the effect that the stock had been lost, apparently destroyed or stolen appears anywhere in the letter. The question then arises: Did the statement in the letter "In the past few months irregularities in the handling of Mr. Raetzer's investments have been discovered", coupled with the request that Raetzer be advised in writing whether the issuer showed "any change in ownership or status" of the 325 shares, in order for Raetzer to determine whether those shares had been affected by the irregularities, constitute implied notice to Standard Oil Company of New Jersey that the stock had been lost, apparently destroyed or wrongfully taken? We answer that question in the negative.

■ The law of implied notice imputes notice only of those facts that are naturally and reasonably connected with the fact known, and to which the known fact can be said to furnish a clue. The only facts presented by the July 22, 1970 letter are: 1) the irregularities in the handling of the investments; and 2) the asserted ownership by Raetzer of 325 shares of stock. The reply letter of the stock transfer agent to Dailey, dated August 3, 1970, expressly referred to the July 22, 1970 letter, and in plain, concise language notified Dailey that the certificate for 25 of the 325 shares had been cancelled on October 7, 1969 (more than eight months before the Dailey letter was written), and that the issuer's books showed that 300 shares were, at that time, registered in the name of Raetzer. That letter answered every question asked of the issuer by Dailey. The only duty owed by Standard Oil Company of New Jersey upon receipt of the letter was to furnish Dailey with the requested information. That duty was fully and timely performed.

The possibility of loss or theft of the stock is not naturally or reasonably connected with any of the facts made known by the letter. The phrase "irregularities in the handling of Mr. Raetzer's investments" is limited by the very words themselves to matters of business, which were of no concern to the issuer. It did no more than advise Standard Oil Company of New Jersey that someone in charge of Raetzer's investments had not adhered to some prescribed rule imposed upon him by Raetzer, or by normal and usual business procedures and customs. There is no reasonable or logical basis for the contention that the phrase, standing alone, or in conjunction with the remainder of the letter, gave rise to an inference that the stock had been lost, apparently destroyed or wrongfully taken. Neither the statute, the relationship of the parties, nor the circumstances described and mentioned in the letter, imposed any duty on the issuer to make any inquiry concerning whether the 300 shares were lost, destroyed or wrongfully taken. The matter of the stock being lost, destroyed or stolen was not fairly suggested by the contents of the letter. The fact that the certificates were missing was fully known to both Raetzer and his attorney long before the letter was written. It would have been a simple task to have notified Standard Oil Company of New Jersey in plain language that the certificates were missing and that it must be presumed that they had been lost, destroyed or stolen. No explanation was offered by Raetzer at the trial why this was not done.

We hold that the July 22, 1970 letter did not constitute notice, express or implied, of the vital fact that the stock had been lost, apparently destroyed or wrongfully taken. If it did constitute any evidence indicative of a fact question to be resolved by the trier of fact, such evidence is so weak that it is no more than a scintilla, grounded solely on conjecture, surmise and speculation. The letter falls short of being any evidence that raised the issue of notice. See *Joske v. Irvine,* 91 Tex. 574, 44 S.W. 1059 (1898);

*Hunter v. Carter,* 476 S.W.2d 41 (Tex.Civ. App.—Houston [14th Dist.] 1972, writ ref'd n. r. e.). The uncontroverted evidence compels a finding as a matter of law that Raetzer did not notify Standard Oil of New Jersey, or its stock transfer agent, that the stock certificates for the 300 shares had been lost, destroyed or wrongfully taken before August 28, 1970, the date the stock represented by such certificates was transferred. Exxon's points 1, 2 and 4 are sustained.

There was no further communication between the parties until December 9, 1970, when Dailey wrote the following letter to the stock transfer agent:

"Please refer to your communication dated August 3, 1970.

Our investigation reveals that the transfer on October 7, 1969 of twenty-five (25) shares of stock in your corporation in Mr. Raetzer's name was done without Mr. Raetzer's knowledge and by the use of a forged signature. Please correct your records in order to show Mr. Raetzer the owner of an additional twenty-five (25) shares of stock in your corporation."

On December 10, 1970, another letter was written by Mr. Dailey to the stock transfer agent, which stated:

"Please refer to memorandum numbered 10T–34 and dated July 28, 1970.

Please advise me of the status of Mr. Koven Raetzer's holdings in Standard Oil Company (New Jersey)."

The stock transfer agent, by letter dated December 22, 1970, advised Dailey that the transfer of the 25 shares was effected through Bank of America (San Francisco), a co-transfer agent. It was suggested that Dailey get in touch with the Bank. The record does not reveal that Dailey did so, and there is no showing of any further communication between Dailey and the issuer, or either of its stock transfer agents.

The trial court, in Finding of Fact VI, further found:

"Plaintiff notified Defendant within a reasonable time that the 25 shares which had been transferred in October, 1969, were transferred based upon a forged signature, and Plaintiff further notified Defendant, or put Defendant on inquiry that the remaining 300 shares of stock might be transferred based upon a forged signature."

Exxon, in its point 6, challenges the above-quoted finding, by asserting that there is "no evidence to support it". We agree.

The December 9, 1970 letter dealt only with the 25 shares of stock. That transfer was handled by Bank of America, not by Morgan Guaranty Trust Company of New York. The transfer of those shares is not before this Court in this appeal. The record is silent with respect to which of the transfer agents, Bank of America or Morgan Guaranty Trust Company, made the transfer of the 300 shares. It is undisputed that the 300 shares were transferred on August 28, 1970. The statute, Tex.Bus. & Comm. Code Ann. § 8.405(a) (1968), requires that the stockholder notify the issuer that the stock has been "lost, apparently destroyed or wrongfully taken" within a reasonable time after he has notice of that fact, and if the issuer registers a transfer of the stock before receiving notice of that fact within a reasonable time, the stockholder is precluded from taking any action against the issuer. It is impossible to impute notice to Standard Oil Company of New Jersey by a letter written on December 9, 1970, that the 300 shares which had already been transferred on August 28, 1970, might have been transferred on a forged signature before August 28, 1970, or that it might, on or subsequent to that date, have been so transferred. Exxon's point 6 is sustained.

Exxon further challenges Finding of Fact III (point 3), Finding of Fact V (point 5), and Finding of Fact VI (point 7) by "contrary to the great weight and overwhelming preponderance of the evidence" points. We have read the record in its entirety and have carefully reviewed all of the evidence in the case, and, as already stated, have sustained all of Exxon's "no evidence" points. The case has been fully developed and a reversal and remand in the interest of justice is not warranted. It is our duty to render the judgment which the trial court should have rendered.

The judgment of the trial court is REVERSED and judgment is here rendered that Koven Raetzer take nothing by his suit against Exxon Corporation. However, in the event that the Supreme Court should disagree with us on our "no evidence" holdings, then and in such event we would hold that Findings of Fact III, V and VI are "against the great weight and overwhelming preponderance of the evidence", and in that event, the case would be reversed and the cause remanded.

REVERSED AND RENDERED.