BARCLAYSAMERICAN/BUSINESS CREDIT, INC., Appellant,

v.

E & E ENTERPRISES, INC., Appellee.

No. 05-84-00529-CV.

Court of Appeals of Texas, Dallas.

Aug. 29, 1985.

H. Campbell Zachry, Dallas, for appellant.

W.A. Pritchard, Dallas, for appellee.

Before SPARLING, VANCE and MALONEY, JJ.

MALONEY, Justice.

This is an appeal by BarclaysAmerican/Business Credit, Inc. ("Barclays") from a take-nothing judgment in favor of E & E Enterprises, Inc. ("E & E"). Barclays brings five points of error contending (1) that the trial court erred in concluding that a contract was created between Wrape Forest Industries, Inc. d/b/a Industrial Wood Products ("Wrape") and E & E by the promise of Wrape to provide 60 days notice of ceasing operations; (2) that the trial court erred in concluding against the great weight of the evidence that E & E could assert defenses based upon facts arising prior to knowledge of the assignment from

Wrape to Barclays; (3) that the trial court erred in concluding that E & E could assert a defense of anticipatory repudiation with respect to failure to deliver a shipment of products in August, 1982; (4) that the trial court erred in concluding that E & E could assert affirmative defenses against Barclays based upon E & E's dealings with Wrape; and (5) that the trial court erred in failing to find for Barclays and, thus, in failing to award stipulated attorney's fees to Barclays. For the following reasons, we affirm the judgment of the trial court.

Much of the evidence in this case was stipulated. In addition, testimony was taken at a trial before the court. The court then made findings of fact and conclusions of law. The evidence reflects that in 1980 Barclays, then doing business as Aetna Business Credit, Inc., and Wrape executed a General Loan and Security Agreement ("Agreement") whereby Wrape granted Barclays a security interest in certain property, including its accounts receivable. The security interest was perfected by the filing of financing statements. Barclays advanced Wrape funds in accordance with the terms of the Agreement. In January of 1982, Wrape filed for protection from its creditors under Chapter 11 of the Federal Bankruptcy Act.

E & E and Wrape had been doing business together for several years. The normal course of their business dealings was for E & E to contact a representative of Wrape, Inc. and place an order for wood products, which Wrape produced, for use in production of wooden cabinets by E & E. The orders varied in size. Wrape would confirm its acceptance of the order by sending E & E a written acknowledgment. The shipment of wood products was delivered to E & E approximately six weeks after an order was placed, and it was accompanied by an invoice reflecting the price to which Wrape and E & E had agreed. E & E normally paid Wrape between ten and sixty days after delivery of the shipment. Wrape delivered a shipment to E & E on June 9, 1982 ("S–1") and another on June 28, 1982 ("S–2"). The prices agreed upon by Wrape for each of these orders totaled $76,105.08. The parties stipulated that the president of Wrape agreed with the president of E & E that Wrape would give E & E sixty days advance notice of Wrape's ceasing of operations.

On June 30, 1982, the bankruptcy court ordered all of the collateral that Wrape had pledged to Barclays, including its accounts receivable, transferred to Barclays. The amounts owed by E & E for S–1 and S–2 were included in the accounts receivable transferred to Barclays.

Wrape also acknowledged an order to deliver a shipment to E & E on July 16, 1982, which delivery date was moved up to July 12, 1982, upon agreement between Wrape and E & E ("S–3") and an order to deliver a shipment to E & E in the first week of August, 1982 ("S–4").

On July 16, 1982, the president of Wrape, William Wrape, orally notified E & E that it had closed its plant and would not deliver the materials described in the acknowledgements for S–3 and S–4. Wrape told E & E that the only way to receive the deliveries for S–3 and S–4 was to talk to Mike Wills, the vice-president of Barclays.

On or about July 23, 1982, Wills sent E & E a letter notifying it that Barclays had been assigned the accounts receivable of Wrape. This letter was received by E & E on July 28, 1982.

Barclays brought this action to recover the amounts claimed for S–1 and S–2. E & E answered that it was damaged as a result of Wrape's breach of its contracts with it for the delivery of S–3 and S–4 and was thus entitled to offset the amount of its damage against Barclays's claims.

Barclays and E & E have stipulated that E & E did not pay Barclays the $76,105.08 owed for S–1 and S–2. They have further stipulated that Wrape was advised prior to May 1, 1982, that if Wrape terminated its accepted contracts with E & E without advance notice, E & E's production of cabinets would be interrupted and it would take at least six weeks to secure similar materials from another supplier; that E &

E had no knowledge before July 16, 1982, of Wrape's intention to cease production; that E & E did not have adequate inventory necessary to manufacture cabinets scheduled for production from July 16, 1982, until it could secure another supplier; that E & E could not secure materials from another supplier until August 18, 1982; and that, during that period, E & E produced 6,347 fewer cabinets than it would have except for Wrape's failure to deliver S–3 and S–4. Further, the parties stipulated that, due to Wrape's failure to give E & E reasonable advance notice of its inability to deliver the wood products, E & E had to refuse further orders for its cabinets until it could secure such materials from another supplier. Finally, the parties stipulated that E & E suffered the following damages: a loss of net profits of $126,940.00 as a direct and proximate result of the aforementioned loss of production and sales; $6,900.00 in expenses incurred to minimize E & E's damages which involved the cutting, reshaping, and culling of materials on hand; $11,500.00 for the cost of overtime labor in attempting to minimize damages; and $22,500.00 due to the cost of waste materials arising out of the cutting and reshaping of materials on hand during this stated period. Based on these stipulated facts, the court found that E & E had proved a valid offset in the amount of $167,840.00.

The primary issue in this appeal is whether the offset found by the trial court was proper. In its first point of error, Barclays contends that the court erred in concluding that a contract was created by an alleged promise of the president of Wrape to provide 60 days' notice of ceasing operations. Barclays argues that there is insufficient evidence of a contract between the parties requiring 60 days' notice of Wrape's ceasing operations because there was no consideration to support the alleged promise and, further, there was no requirements contract. In its Memorandum Decision, which was adopted by the trial court

as findings of fact and conclusions of law, the court found that E & E's claim arose out of a promise by Wrape to give the 60 day notice, an order for S–3 and S–4 placed by E & E in reliance on Wrape's promise, and a breach by Wrape of their agreement by notifying E & E on July 16, 1982, that the plant was closing that same day. Thus, the court found that the consideration for the 60 day notice was E & E's agreement to purchase S–3 and S–4. However, Barclays argues that E & E did not show that the course of dealing between Wrape and E & E was altered in any way in response to the promise of 60 days' notice and thus no valid consideration was given. Further, Barclays urges that there was no requirements contract between Wrape and E & E. This argument is addressed to the court's finding that E & E had no supplier other than Wrape for certain wood products.

We need not decide whether the evidence supports the court's findings as to the 60 day notice and the supporting consideration, or whether a requirements contract existed, because the judgment of the trial court was sufficiently supported by the findings of fact that E & E placed the orders for S–3 and S–4 and Wrape confirmed its acceptance of the orders by the written acknowledgments for S–3 and S–4. On July 16, 1982, Wrape notified E & E that it would not deliver S–3 and S–4. The court concluded that Wrape breached the contract to deliver S–3 and S–4. We find that the evidence supports these findings and conclusions.

■ Under TEX.BUS. & COM.CODE ANN. § 2.204(a) (Vernon 1968),[1] a contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such contract. Under section 2.206(a)(2), an order or other offer to buy goods for prompt or current shipment shall be construed as inviting ac-

---

1. Unless otherwise noted, all statutory references herein are to TEX.BUS. & COM.CODE ANN.

(Vernon 1968 and Vernon Supp.1985).

ceptance by a prompt promise to ship. Although there is no Texas case law directly on point, other jurisdictions which have adopted this section from the Uniform Commercial Code have interpreted it to include a situation like the one at hand. In *American Bronze Corp. v. Streamway Products*, 8 Ohio App.3d 223, 456 N.E.2d 1295, 1300 (1982), the court held that generally the submission of a purchase order is viewed as an offer which may then be accepted or rejected by the seller. *See also Lockwood Corp. v. Black*, 501 F.Supp. 261, 264 (N.D.Tex.1980), *aff'd*, 669 F.2d 324 (5th Cir.1982). In *Roto-Lith, Ltd. v. F.P. Bartlett & Co.*, 297 F.2d 497, 499 (1st Cir.1962), the court stated that under section 2.206 of the Uniform Commercial Code in Massachusetts the mailing of an acknowledgment of an order constitutes an acceptance which completes the contract. The Massachusetts provision is identical to section 2.206 of the Texas code. In this case, the parties stipulated that acknowledgments *confirmed* acceptance of orders. Thus, the acceptances were given at some time prior to the acknowledgments thereof. The orders and acceptances were sufficient to show agreements. Section 2.204; *see Dura-Wood Treating Co. v. Century Forest Industries, Inc.*, 675 F.2d 745, 750–52 (5th Cir.), *cert. denied*, 459 U.S. 865, 103 S.Ct. 144, 74 L.Ed.2d 122 (1982); *Halpern v. Western Pennsylvania Chemical Co.*, 182 Pa.Super. 354, 126 A.2d 502, 505 (1956).

■ The trial court found that there was a contract between Wrape and E & E for Wrape to deliver S–3 and S–4 on the stated dates and that Wrape breached the contract when it did not deliver S–3 and S–4. The court found that the oral notification on July 16, 1982, that Wrape would not deliver constituted an anticipatory repudiation under section 2.610. The court then found that under section 2.610(2), E & E was entitled to resort to any remedy for the breach. The amount of damages claimed by E & E pursuant to sections 2.713 and 2.715, authorizing damages for incidental and consequential damages from the seller's breach, was stipulated by the parties. We hold that the findings of fact

regarding the breach of the contracts for S–3 and S–4 are sufficient to support the judgment of the trial court and are not against the overwhelming weight and preponderance of the evidence. *De Benavides v. Warren*, 674 S.W.2d 353, 362–63 (Tex. App.—San Antonio 1984, no writ). We overrule Barclays's first point.

In its second point of error, Barclays contends that the court erred in concluding against the great weight of the evidence that E & E could assert defenses based on facts arising prior to E & E's knowledge of the assignment from Wrape to Barclays. The trial court cited *Glass v. Carpenter*, 330 S.W.2d 530, 537 (Tex.Civ.App.—San Antonio, 1959, writ ref'd n.r.e.), and section 9.318 in support of its holding. Since this case is one for the sale of goods, the governing provision regarding the availability of E & E's defenses and claims is section 9.318(a). That section provides:

(a) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in Section 9.206 the rights of an assignee are subject to

(1) all the terms of the contract between the account debtor and the assignor and any defense or claim arising therefrom; and

(2) any other defense or claim of the account debtor against the assignor *which accrues before the account debtor receives notification of the assignment* (emphasis added).

Section 9.318(a)(2) is applicable to this case since the offset defense of E & E did not arise out of Barclays's claim.

Barclays argues that Thurston, a vice-president of E & E, testified that on July 16, 1982, he received *oral* notification of the assignment by Wrape to Barclays. We note first that this oral notification consisted only of statements made by Mr. Wrape to the effect that the plant was shutting down, that S–3 and S–4 would not be delivered, and that "the only way" that E & E might get the material would be "to talk to Mr. Mike Wills at Barclays." In regard to

these, Wrape gave Thurston the phone number at Barclays. Thus, Barclays argues that E & E is precluded from asserting a claim, arising on or after July 16, 1982, against Barclays based on S–3 and S–4 because the claims did not arise prior to the notification of the assignment to Barclays.

We note that this communication may not have been sufficient to notify E & E of the assignment of the accounts receivable. Notice is defined under section 1.201(25), (26):

> (25) A person has "notice" of a fact when
>
>> (A) he has actual knowledge of it; or
>>
>> (B) he has received a notice or notification of it; or
>>
>> (C) from all the facts and circumstances known to him at the time in question he has reason to know it exists.
>
> A person "knows" or has "knowledge" of a fact when he has actual knowledge of it. "Discover" or "learn" or a word or phrase of similar import refers to knowledge rather than reason to know. The time and circumstances under which a notice or notification may cease to be effective are not determined by this title.
>
> (26) A person "notifies" or "gives" a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. A person "receives" a notice or notification when
>
>> (A) it comes to his attention; or

>> (B) it is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications.

In *Chase Manhattan Bank (N.A.) v. New York*, 48 A.D.2d 11, 367 N.Y.S.2d 580, 583 (1975), *aff'd*, 40 N.Y.2d 590, 357 N.E.2d 366, 388 N.Y.S.2d 896 (1976), *modified*, 42 N.Y.2d 1011, 368 N.E.2d 286, 398 N.Y.S.2d 536 (N.Y.1977), the court, analyzing the purpose of notice under section 9.318, stated that the purpose of the section is to protect the rights of an account debtor vis-a-vis an assignee of the original creditor and concluded that, to fully protect those rights, *actual notice* of the assignment is required. Thus, the account debtor's right to ˙assert claims against the assignee should not be disturbed until he has actual notice of the assignment. *Id.*

 It is clear in our case that Wrape called the closing of its business to E & E's attention, section 1.201(26)(A), and informed E & E that it could discuss the matter with Barclays. Although we have found no case directly in point, we note that merely authorizing payment of a stated sum to a third party cannot be considered as notification that such sum has been assigned to the third party. *S & W Trucks, Inc. v. Nelson Auction Service, Inc.*, 80 N.M. 423, 457 P.2d 220, 222 (1969). Likewise, merely directing E & E to Barclays to discuss obtaining S–3 and S–4 did not necessarily give notice of the assignment of the accounts receivable for S–1 and S–2.[2]

---

2. Although actual notice may be expressed or implied, *Exxon Corp. v. Raetzer*, 533 S.W.2d 842, 846 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.), Barclays has not raised any contention that the July 16, 1982, conversation constituted implied notice, such that E & E should have made further inquiry after learning that Wrape had closed its business. The fact which is claimed to put a person on notice must be of a nature that would normally excite investigation. Mere rumors, vague statements, and circumstances that are dubious or equivocal and do no more than arouse suspicion or create speculation are not sufficient to constitute actual notice. *Id.* Whatever puts a person on inquiry ordinarily amounts in law to notice, provided inquiry has become a duty and would lead to knowledge of the facts by the exercise of ordinary diligence and understanding. *Flack v. First National Bank of Dalhart*, 148 Tex. 495, 226 S.W.2d 628, 632 (1950). However, the duty of inquiry extends only to matters that are fairly suggested by the facts really known. *Id.*, 226 S.W.2d at 631. Where the circumstances may be equally referred to some matter other than that with notice of which one is sought to be charged, the circumstances will not be deemed sufficient to charge one with notice. *Exxon Corp.*, 533 S.W.2d at 847. We note that, here, the statement that E & E should talk to Wills at Barclays regarding the delivery of S–3 and S–4 very easily could have referred only to the deliv-

In reviewing whether the July 16, 1982, conversation constituted notice to E & E of the assignment of the accounts receivable, we note that this is a question of fact; it becomes a question of law only when there is no room for ordinary minds to differ as to the proper conclusion to be drawn from the evidence. *Exxon Corp. v. Raetzer*, 533 S.W.2d 842, 846 (Tex.Civ.App. —Corpus Christi 1976, writ ref'd n.r.e.). In the instant case, the trial court found that on July 28, 1982, E & E received the letter from Barclays notifying it of the assignment of the accounts for the amounts due on S–1 and S–2. The parties had stipulated that on July 23, 1982, Barclays sent the letter notifying E & E of the assignment and on July 28, 1982, E & E received the letter. We find the evidence was sufficient to support the finding and that it was not so against the great weight and preponderance of the evidence as to be clearly and manifestly wrong. *De Benavides*, 674 S.W.2d at 356; *Choyce v. Dallas County Child Welfare Unit*, 642 S.W.2d 559, 561 (Tex.App.—Dallas 1982, no writ).

The trial court concluded that, under *Glass* and section 9.318, since there was no agreement by E & E not to assert defenses against Barclays, the offset defense could be asserted because all of the facts on which it was based arose before the notification. We note that the key question under *Glass* and section 9.318(a)(2) is whether the *defense or claim*, not the facts on

which it is based, arose before the notification. *See BarclaysAmerican/Business Credit, Inc. v. Paul Safran Metal Co.*, 566 F.Supp. 254, 256–57 (N.D.Ill.1983). In the case before us, the offset defense arose at the time that Wrape notified E & E that it would not deliver the materials. It was at this time that a cause of action for anticipatory breach under section 2.610 accrued. Although the court concluded that it was only the facts, and not the defenses, that needed to arise prior to the notification, we still uphold the judgment because the fact findings support the conclusion that the defense occurred prior to the notification, *see De Benavides*, 674 S.W.2d at 362–63, since the breach occurred on July 16, 1982, and the notification of the assignment was received by E & E on July 28, 1982.[3]

In its fourth point of error, Barclays contends that the trial court erred in concluding that E & E could assert a defense of anticipatory repudiation with respect to Wrape's failure to deliver a shipment of products in August 1982. Barclays argues that E & E was notified of the assignment in July 1982, that the evidence was insufficient to establish an anticipatory repudiation with respect to the August 1982 shipment, and that any defense available to E & E as a result of the failure to make the August 1982 delivery did not arise until after E & E had notice of the assignment. Further, Barclays contends that continued negotiations between E & E and Barclays

---

ery of those shipments and had nothing to do with the assignments of accounts receivable.

**3.** Even if we were to find that the trial court's finding was erroneous and that the notification of the assignment did occur on July 16, 1982, the evidence shows that the breach still occurred when Wrape told Thurston that the plant was shutting down. He *then* told Thurston that he could contact Wills at Barclays. Thus, the breach occurred first and E & E could assert the offset defense based upon the breach against Barclays.

We also mention, in passing, the stipulated facts that Wrape and E & E had been doing business together for several years and that the normal course of their business dealings was that E & E would place an order; Wrape would confirm its acceptance of the order by sending E & E an acknowledgment; Wrape would send

the materials to E & E six weeks after an order had been placed; and then, E & E would pay Wrape for the shipment between ten and sixty days following delivery. This evidence indicates that the course of dealing between Wrape and E & E was to treat the entire Wrape-E & E account as a "running account." Further, Barclays sent E & E a single notice of assignment of the entire Wrape-E & E account rather than individual notices of assignment of each invoice. Thus, it could be deducted that the entire Wrape-E & E account was a single contract and that, therefore, under § 9.318(a)(1), E & E is entitled to offset claims arising out of any sales by Wrape to it, including those based on the non-delivery of S–3 and S–4. *United California Bank v. Eastern Mountain Sports, Inc.*, 546 F.Supp. 945, 965 (D.Mass.1982), *aff'd*, 705 F.2d 439 (1st Cir.1983).

proves that anticipatory repudiation was not established. Finally, Barclays argues that, even if a breach was established as to S–3, no anticipatory breach was established as to S–4.

Our disposition of this point is governed by section 2.610 which provides that when either party repudiates with respect to performance not yet due the aggrieved party may resort to any remedy for breach. The comments of section 2.610 provide, in pertinent part, as follows:

1. [A]nticipatory repudiation centers upon an overt communication of intention or an action which renders performance impossible or demonstrates a clear determination not to continue with performance.

Under the present section when such a repudiation substantially impairs the value of the contract, the aggrieved party may at any time resort to his remedies for a breach

. . . .

. . . . .

2. It is not necessary for repudiation that performance be made literally and utterly impossible. Repudiation can result from action which reasonably indicates a rejection of the continuing obligation.

In *Laredo Hides Co. v. H & H Meat Products Co.*, 513 S.W.2d 210, 220 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.), the court held that an anticipatory breach of a contract exists if, in positive and unconditional terms, a party refuses to perform further thereunder. The evidence that Wrape informed E & E that it had closed its plant and would not deliver S–3 and S–4 supported the trial court's conclusion that Wrape's notification constituted an oral repudiation as to the delivery of S–3 and S–4.[4]

Thus, the trial court correctly concluded that the notice of non-delivery on July 16, 1982, was an anticipatory breach of the contracts for S–3 and S–4. The finding that Wrape notified E & E on July 16, 1982, that S–3 and S–4 would not be delivered is supported by the evidence and supports the judgment. *De Benavides*, 674 S.W.2d at 363; *Jackson v. Lone Star Plywood and Door Corp.*, 652 S.W.2d 830, 831 (Tex.App.—Fort Worth 1983, no writ). Moreover, any contention that the continued negotiations between E & E and Barclays somehow lessened the effect of the repudiation is without merit. Wrape unequivocally stated that it would not deliver the orders. The breach occurred at that time. Further negotiations with Barclays did not revive the contract. No retraction of the repudiation was shown.

■ In its third point of error, Barclays contends that the court erred in concluding that E & E could assert affirmative defenses against Barclays based on E & E's dealings with Wrape because no evidence supported the court's recognition of E & E's affirmative defenses and E & E failed to plead any affirmative defenses, and thus, no confession and avoidance defenses were available to E & E. Our review of the pleadings reveals that E & E pleaded that it had sustained damages as a direct and proximate result of Wrape's breach of the contracts with it and that therefore it had valid setoffs against Barclays's claim. We hold that this pleading gave Barclays fair and adequate notice of the evidence of the offset amounts that E & E presented. *Tennell v. Esteve Cotton Co.*, 546 S.W.2d 346, 356 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.). *Cf. Matrix, Inc. v. Provident American Insurance Co.*, 658 S.W.2d 665, 667 (Tex.App.—Dallas 1983, no writ); *American National Insurance Co. v. Fox*, 184 S.W.2d 937, 941 (Tex.Civ.App.—Fort Worth 1944, writ ref'd w.o.m.). Moreover,

---

**4.** With respect to the delivery of S–3, the court might well have concluded that the breach occurred on July 12, 1982, when S–3 was not delivered, since the court could have found that time was of the essence in the performance of the contract. *See Neco Engineering Co. of Texas v. Lee*, 487 S.W.2d 185, 187 (Tex.Civ.App.—Waco 1972, no writ); *but cf. Builders Sand, Inc. v. Turtur*, 678 S.W.2d 115, 118 (Tex.App.—Houston [14th Dist.] 1984, no writ); *Laredo Hides*, 513 S.W.2d at 216.

any defect in E & E's pleadings was waived by the failure of Barclays to specifically except thereto. TEX.R.CIV.P. 90.

In its final point of error, Barclays argues that the court erred in failing to find for Barclays, as contended in the previous points of error, and, as a consequence, in failing to award the stipulated attorney's fees to Barclays. Because we have overruled all of Barclays's points and agree that E & E was entitled to the offset, Barclays was not entitled to recover attorney's fees since the offset exceeded its claims. The trial court correctly refused to award attorney's fees to Barclays.

Accordingly, we overrule all of Barclays's points of error and affirm the judgment of the trial court. It is ORDERED that E & E recover its costs of this appeal from Barclays and United States Fire Insurance Company, as surety on Barclays's appeal bond.