In re ALLIANCE HEALTH OF FORT
WORTH, INC., Debtor.

United States of America, Appellant,

v.

Cherry Street Partners, L.P., Appellee.

No. 4:98–CV–691–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

Jan. 7, 1999.

Andrew Lee Sobotka, Attorney at Law, U.S. Department of Justice, Tax Division, Dallas, TX, for Internal Revenue Service, appellant.

Joseph E Marshall, Attorney at Law, Munsch, Hardt, Kopf & Harr, Dallas, TX, for Cherry Street Partners, L.P., appellee.

Barbara Elaine Hargis, Attorney at Law, Harris Finley & Bogle, Fort Worth, TX, for Alliance Health of Fort Worth, Inc., debtor.

## MEMORANDUM OPINION
## and ORDER

McBRYDE, District Judge.

This action comes before the court as an appeal from an order of the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, the Honorable Massie Tillman presiding, entered June 11, 1998, denying the motion of appellant, United States of America, to lift stay to permit set off. The court, having considered the briefs of appellant and appellee, Cherry Street Partners, L.P., the record on appeal, and applicable authorities, finds that the order should be reversed.

### I.

#### Jurisdiction

This is an appeal from an order signed June 9, entered June 11, 1998, and supporting findings of fact and conclusions of law signed and entered June 12, 1998. The court's jurisdiction exists pursuant to 28 U.S.C. § 158(a).

### II.

#### Pertinent Facts and Underlying Proceedings

Alliance Health of Fort Worth, Inc., debtor, participated in the federally funded Medicare program as a provider of health-related services in the Fort Worth area. On December 9, 1994, debtor filed for relief under Chapter 7 of the Bankruptcy Code. Appellant, through the Internal Revenue Service, filed a claim for unpaid employment taxes, penalties, and interest. Thereafter, it was determined that appel-

lant, through the United States Department of Health and Human Services, owed debtor $179,015.00 under the Medicare program. On January 14, 1998, appellant filed a motion to lift or modify the stay to permit a set-off of the funds she owed to debtor against taxes owed by debtor. Debtor did not object to the motion. A dispute between appellant and the Chapter 7 trustee was resolved by appellant withdrawing a claim for post-petition interest. The only other objection to the motion came from appellee, which had purchased, after the bankruptcy filing, the rights of one of debtor's secured creditors. Appellee contended that it was the holder of a security interest in the Medicare receivables that was superior to appellant's right of set-off.

On April 29, 1998, the motion was tried on the following stipulated facts:

1. On August 1, 1989, the Debtor and NatWest Bank, N.A., f/k/a National Westminster Bank USA ("NatWest") entered that certain Loan Agreement of even date therewith, as amended on November 15, 1989, and on August 1, 1991 (collectively the "Loan Agreement"). In conjunction therewith, the Debtor executed that certain Restated Term Note dated August 1, 1991 in the original principal amount of $1,800,000.00 (the "Note") payable to the order of NatWest, as well as certain Deeds of Trust (the "Deeds of Trust") and other collateral documents securing the obligations owing under the Note (the "Collateral Security Documents") (the Note, the Deeds of Trust and the Collateral Security Documents are collectively referred to herein as the "Loan Documents").

2. Pursuant to the terms of the Loan Documents and the Assignments, NatWest held a valid security interest and lien in certain property of the Debtor, including without limitation, all existing and after acquired, accounts receivable and reimbursement obligations owing the Debtor by the United States Department of Health and Human Services ("HHS") pursuant to HHS's Medicare Reimbursement Program. UCC–1's for these security interests and liens were filed with the Texas Secretary of State on August 1, 1989.

3. Subsequent to the execution of the Loan Documents, Fleet Bank, N.A. ("Fleet") became NatWest's successor-in-interest by merger to NatWest. On or about July 23, 1997, Fleet Bank sold and assigned its interest in the Loan Documents and its claims against the Debtor to Cherry Street pursuant to the terms of that certain (a) Non Recourse Assignment of Note and Deeds of Trust and Assumption Agreement (related to certain Fort Worth property) dated July 23, 1997; (b) Assignment of Claim dated July 21, 1997; and (c) Non Recourse Assignment of Note and Deeds of Trust and Assumption Agreement (related to certain El Paso property) dated July 23, 1997 (collectively the "Assignments").

4. Pursuant to the terms of the Loan Documents and the Assignments, Cherry Street contends that it is the holder of a secured claim against the Debtor in the approximate amount of $1,812,471.87, exclusive of interest, attorneys' fees, costs and expenses (the "Cherry Street Claim"). As a result of the foregoing assignment and merger, Cherry Street now holds the lien rights described in paragraph 2 above ("the Cherry Street Lien"). For purposes of this hearing on April 29, 1998, the IRS agrees that the Court may rely upon and refer to the Cherry Street Claim in resolving the issues presented to the Court.

5. As Cherry Street's predecessor-in-interest, Fleet timely filed its Proof of Claim with respect to the Cherry Street Claim on April 21, 1995, and Cherry Street filed its Notice of Transfer of Claim Pursuant to Federal Rule of Bankruptcy Procedure 3001(e)(2) on July 29, 1997.

6. Subsequently [sic], on April 26, 1994, the IRS filed a Notice of Federal

Tax Lien against the Debtor with the Texas Secretary of State for several periods of unpaid employment taxes, including Form 941 employment taxes for the period ended December 31, 1993.

7. On or about March 30, 1994, the Debtor's period of service under the Medicare Reimbursement Program closed.

8. On November 4, 1994, the Debtor submitted its Cost Report under the Medicare Reimbursement Program for the period ended March 30, 1994.

9. On April 1, 1996, the HHS, which administers the Debtor's rights under the Medicare Reimbursement Program informed the Debtor of its preliminary audit results of the Debtor's Cost Report for the period ended March 30, 1994, indicating that HHS had underpaid the Debtor for services provided in the Medicare Program for that period by $155,561.

10. On February 5, 1997, the HHS issued a revised letter advising the Debtor of its final audit results of the Debtor's Cost Report for the period ended March 30, 1994, indicating that the HHS had underpaid the Debtor for services provided in the Medicare Program for that period by $179,015, (the "Medicare Underpayment"). The Medicare Underpayment consists of those certain sums determined by HHS as owing to the Debtor in accordance with 42 U.S.C. § 1395 as noticed by HHS as of March 30, 1994.

11. The automatic stay has been terminated by order dated May 30, 1997, to allow Cherry Street to enforce its Claim and the Cherry Street Lien. Cherry Street has made demand upon HHS for payment of the Medicare Underpayment.

12. The IRS filed an Amended its Proof of Claim dated November 21, 1997 (the "IRS Claim"), and asserted a right of set off against the Medicare Underpayment for the following: prepetition claims against this estate:

(a) penalties in the amount of $381.98 and interest in the amount of $3.69 for the period ended December 31, 1991;

(b) penalties in the amount of $578.26 and interest in the amount of $1,792.04 for the period ended March 31, 1993;

(c) tax in the amount of $44,289.92, penalties in the amount of $33,875.67 and interest in the amount of $10,-206.44 for the period ended December 31, 1993; and

(d) tax in the amount of $25,337.08, penalties in the amount of $25,397.55 and interest in the amount of $44,-190.80 for the period ended March 31, 1994.

13. The IRS contends that after taking into account certain post-petition adjustments to the Debtor's accounts for the above periods, the total amount of prepetition taxes, plus prepetition interest on those taxes being claimed by the IRS is $84,369.53, as indicated by Exhibit A, attached hereto.

14. The IRS contends that after taking into account certain post-petition adjustments to the Debtor's accounts for the above periods, the total amount of prepetition penalties, plus prepetition interest on those penalties being claimed by the IRS is $61,118.47 as indicated by Exhibit B, attached hereto.

15. Cherry Street disputes the amount and validity of the IRS Claim, but for purposes of this hearing on April 29, 1998, Cherry Street agrees that the Court may rely upon and refer to the IRS Claim in resolving the issues presented to the Court. The parties do not intend to adjudicate the amount and validity of the IRS Claim at this time and Cherry Street specifically reserves the right to assert objections to the amount, allowance and validity of the IRS Claim in subsequent proceedings.

16. IRS specifically reserves the right to assert objections to the amount,

allowance and validity of Cherry Street's Claim in subsequent proceedings.

17. The IRS is seeking to offset the IRS Claim against the Medicare Underpayment.

18. Cherry Street objects to such offset and has properly intervened in these lift stay proceedings.

19. The specific legal issues being presented to the Court at this hearing are as follows:

a. Whether the Cherry Street Lien against the Debtor's property takes priority over the United States' set off rights against the Debtor; and

b. Whether Sections 724 and 726 of the Bankruptcy Code prevent the IRS from being able to set off its prepetition penalties, and interest on penalties, against the Medicare Underpayment?

20. For purposes of set off analysis, the parties agree that the IRS Claim and the Medicare Underpayment both arise prepetition.

21. Provided that the Medicare Underpayment is treated as a prepetition asset, the United States stipulates that its tax liens are not relevant for purposes of the present Motion to Lift Stay to Permit Set Off.

22. Provided that the Medicare Underpayment obligation to the Debtor does not earn post-petition interest, the IRS withdraws its request for the right to set off any portion of the Medicare Underpayment against any post-petition interest accruing on the Debtor's unpaid tax obligations.

23. The parties hereto agree that the foregoing stipulations may be incorporated into the record of these proceedings and relied upon by this Court for the determination of the issues set forth above.

24. The parties hereto further stipulate that neither party intends to present any other evidence at the April 29, 1998, hearing on this matter, but both reserve the right to seek a postponement of the hearing should the need for additional evidence which was previously unforeseen become necessary.

By letter dated May 8, 1998, the bankruptcy judge informed the parties that he had concluded the motion to lift stay should be denied. The parties then agreed on the form of an order and findings of fact and conclusions of law, which the court signed. This is an appeal from the order and findings of fact and conclusions of law.

### III.

### *Issues on Appeal*

Appellant presents two issues on appeal. First, the bankruptcy court erred in concluding that appellee's interest in the Medicare receivable was superior to appellant's right of set off. Second, appellee's alternative objection to the motion to lift stay that § 726 of the Bankruptcy Code requires subordination of appellant's right of set off for penalties is without merit.

### IV.

### *Standard of Review*

To the extent the appeal presents questions of law, the bankruptcy court's judgment is subject to *de novo* review. *Pierson & Gaylen v. Creel & Atwood (In re Consolidated Bancshares, Inc.)*, 785 F.2d 1249, 1252 (5th Cir.1986). Findings of fact, however, will not be set aside unless clearly erroneous. *Memphis–Shelby County Airport Authority v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 783 F.2d 1283, 1287 (5th Cir.1986). A finding is clearly erroneous, although there is evidence to support it, when the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* The mere fact that this court would have weighed the evidence differently if sitting as the trier of fact is not sufficient to set aside the bankruptcy court's order if that

court's account of the evidence is plausible in light of the record viewed in its entirety. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

## V.

### *Priority Between Right to Set–Off and Secured Claim*

■■■ The primary issue in this case is whether the bankruptcy court erred in holding that appellee's rights as a secured creditor were superior to the rights of appellant to set off the debt owed to debtor against the taxes due by debtor. The parties make extremely complicated arguments for what boils down to a very simple question: "Since when does an assignee of a claim wind up with more than the assignor would be entitled to had he not assigned the claim?" *Defense Servs., Inc. v. United States (In re Defense Servs., Inc.),* 104 B.R. 481, 484 (Bankr.S.D.Fla.1989). And, the answer is, of course, that a valid and unqualified assignment operates to transfer to the assignee no greater right or interest than was possessed by the assignor. *Id.* at 485. In other words, there is no question that set-off would have been appropriate had debtor not filed bankruptcy. The fact that debtor assigned its rights has no effect on the set-off right. Neither does the fact that debtor filed bankruptcy. 11 U.S.C. § 553.

One of the cases relied upon by appellee, *MNC Commercial Corp. v. Joseph T. Ryerson & Son, Inc.,* 882 F.2d 615 (2d Cir.1989), involved subsequently arising set-offs for claims of a third party and is thus distinguishable. The other case, *Griffin v. Continental Am. Life Ins. Co.,* 722 F.2d 671 (11th Cir.1984), pertains to an application of Georgia law, which the court does not find persuasive. The Fifth Circuit has determined that a subordinated claim can be used to set off a claim by the bankrupt estate against a creditor even though the subordinated claim could not itself share in the dividends. *Rochelle v. United States,* 521 F.2d 844, 855 (5th Cir.

1975), *mandate amended,* 526 F.2d 405 (5th Cir.), *cert. denied,* 426 U.S. 948, 96 S.Ct. 3168, 49 L.Ed.2d 1185 (1976). *See Texas Bank & Trust v. United States (In re Sound Emporium, Inc.),* 70 B.R. 22, 24 (W.D.Tex.1987). There is no question that the government has the right to apply monies due it to the extinguishment of its obligations on other accounts. *In re IML Freight, Inc.,* 65 B.R. 788, 793 (Bankr. D.Utah 1986) (citing *Gratiot v. United States,* 40 U.S. 336, 15 Pet. 336, 10 L.Ed. 759 (1841)).

■■■ Even were state law to be applied in determining whether appellant may exercise the right to set-off, the result would be the same. Although the right to set-off is not an Article 9 security interest, § 9.318 determines the priority between a right of set-off and a security interest. *In re Otha C. Jean & Assocs., Inc.,* 152 B.R. 219, 222 (Bankr.E.D.Tenn.1993). It provides that the right to set-off (a defense to payment) prevails over a perfected security interest unless the account debtor, appellant, had actual notice of the security interest before the set-off right accrued. *Id.* And, mere filing of a UCC financing statement is not notice for purposes of § 9.318. *Zions First Nat'l Bank, N.A. v. Christiansen Bros., Inc. (In re Davidson Lumber Sales, Inc.),* 66 F.3d 1560, 1565–66 (10th Cir.1995); *In re Otha C. Jean & Assocs., Inc.,* 152 B.R. at 222–23. Moreover, the burden is on the secured creditor to establish that the account debtor received notice. *Davidson,* 66 F.3d at 1565. Here, there has been no suggestion, much less any evidence, of notice having been given at any time.

## VI.

### *Effect of 11 U.S.C. § 726*

■■■ Appellant next urges the court to consider appellee's alternative argument that appellant should not be permitted to set off prepetition penalties and interest which would otherwise be subordinated to

the claims of other creditors pursuant to 11 U.S.C. § 726(a)(4). Appellee has not pointed out any authority, however, that would limit the amount of set-off to which appellant is entitled. Clearly, all prepetition debt is entitled to be set off. *See IML Freight, Inc.,* 65 B.R. at 794. The right to set-off is not affected by the debtor's bankruptcy, 11 U.S.C. § 553; accordingly, the provisions regarding subordination of claims do not apply.

## VII.

### *ORDER*

For the reasons discussed herein,

The court ORDERS that the bankruptcy court's June 11, 1998, order from which appeal is taken be, and is hereby, reversed; that the bankruptcy court's conclusions of law in paragraphs 5.c. and 5.d. be, and are hereby, set aside and vacated; and that the automatic stay be, and is hereby, lifted so that appellant may exercise her right of set-off.