**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**

October 29, 2019

Lyle W. Cayce
Clerk

No. 18-20245

————

FINSERV CASUALTY CORPORATION; A.M.Y. PROPERTY & CASUALTY
INSURANCE CORPORATION,

Plaintiffs - Appellees

v.

SYMETRA LIFE INSURANCE COMPANY; SYMETRA ASSIGNED
BENEFITS SERVICE COMPANY,

Defendants - Appellants

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

————

No. 18-20762

————

FINSERV CASUALTY CORPORATION; A.M.Y. PROPERTY & CASUALTY
INSURANCE CORPORATION,

Plaintiffs - Appellees

v.

SYMETRA LIFE INSURANCE COMPANY; SYMETRA ASSIGNED
BENEFITS SERVICE COMPANY,

Defendants - Appellants

Appeals from the United States District Court
for the Southern District of Texas

No. 18-20245 c/w No. 18-20762

Before SMITH, DENNIS, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Symetra Life Insurance Co. and Symetra Assigned Benefits Service Co. (collectively, "Symetra") appeal a jury verdict in favor of appellees FinServ Casualty Corp. ("FinServ") and A.M.Y. Property & Casualty Insurance Corp. ("A.M.Y."). We REVERSE the district court's judgment and REMAND with instruction to RENDER judgment as a matter of law for Symetra.

## I.   Background

The parties operate in the structured-settlement market.[1]  Symetra is an issuer and obligor of annuity contracts, meaning it acquires money to make annuity payments to tort victims with structured settlements. Non-parties Rapid Settlements, Ltd. ("Rapid") and RSL-3B-IL, Ltd. ("RSL-3B") purchase structured settlements from such victims for a discounted lump sum.[2] To fund their business, Rapid and RSL-3B obtained secured loans from FinServ and A.M.Y., which are casualty insurance companies.[3]

These entities have been litigating against each other for nearly two decades. The present consolidated cases involve structured settlement payments Symetra owed to two individuals, Ana Meza and Patrick Reihs. Symetra owed $25,000 to Meza and $60,000 to Reihs. RSL-3B acquired the rights to the Meza and Reihs payments from those individuals in 2004 and 2005, respectively, with Rapid acting as broker. Both payments were subject to security interests held by FinServ and A.M.Y. in all of Rapid and RSL-3B's

---

[1] A structured settlement provides a tort victim with periodic annuity payments over time rather than an immediate lump sum.

[2] A Washington court of appeals previously determined that Rapid and RSL-3B were alter egos. *In re Rapid Settlements, Ltd.* (*Rapid II*), 271 P.3d 925, 931 (Wash. Ct. App. 2012).

[3] All four of these entities are owned or controlled by Stewart Feldman of the Feldman Law Firm, LLP.

then-owned and after-acquired property.[4]   UCC-1 financing statements were filed with the Texas Secretary of State in 2004 and 2008 disclosing FinServ's and A.M.Y.'s rights in Rapid's and RSL-3B's property.

Symetra has obtained several judgments against RSL-3B and Rapid.  In 2006 and 2008, Washington courts awarded $39,287.04 in attorney fees and costs to Symetra from Rapid due to Rapid's violations of the Washington Structured Settlement Protection Act ("SSPA"), WASH. REV. CODE ANN. §§ 19.205.010–.901, and an unsuccessful appeal from that judgment.  *In re Rapid Settlements, Ltd.* (*Rapid II*), 271 P.3d 925, 927–28 (Wash. Ct. App. 2012); *Rapid Settlements, Ltd. v. Symetra Life Ins. Co.* (*Rapid I*), 139 P.3d 411, 412, 414 (Wash. Ct. App. 2006).  Symetra was granted a right to offset the Reihs payment with the attorney-fee award in 2010.  *Rapid II*, 271 P.3d at 929, 931 (affirming the trial court's grant of the right to offset).  As a result of separate litigation concerning Rapid's circumvention of the Washington and Texas SSPAs, a Texas federal district court directed Rapid to pay Symetra $901,297.63 in fees and costs in 2015.  *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, No. H-05-3167, 2015 WL 6739022, at *1 (S.D. Tex. Nov. 4, 2015).  Finally, in 2013, a Washington state court awarded Symetra a substantial amount in sanctions when RSL-3B violated a temporary restraining order enjoining it from collaterally attacking the offset order from *Rapid II*.  *In re Rapid Settlements, Ltd.* (*Rapid III*), 359 P.3d 823, 830, 835–40 (Wash. Ct. App. 2015) (affirming in part the trial court's award of sanctions).

In 2012, FinServ and A.M.Y. notified Symetra via letter that they claimed security interests in the Reihs payment.  Symetra then notified RSL-

---

[4] FinServ was a spinoff from A.M.Y. and acquired an interest in the loan to RSL-3B when it was created.  A.M.Y. and FinServ have since merged, with A.M.Y. being the surviving entity.

3B that it would offset the Reihs and Meza payments pursuant to the offset order from *Rapid II* and the sanctions judgment from *Rapid III*, respectively. In all, Symetra offset $83,543.77, including the entire Meza payment and all but $1,456.23 of the Reihs payment.

RSL-3B filed suit in Texas state court to challenge Symetra's offsets, and the case was removed to the Southern District of Texas. FinServ and A.M.Y. joined as plaintiffs based on their stated security interests, claiming that the rights to payment arising from their security interests were not subject to Symetra's offset rights. The court granted summary judgment against all RSL-3B's claims, leaving only claims by FinServ and A.M.Y.[5] Symetra moved for summary judgment against FinServ and A.M.Y., arguing that they had failed to provide timely notice of their security interests. The district court denied the motion, stating in relevant part that "there [were] fact issues relevant to whether Symetra received notification of [the] assignments of the disputed payments [to FinServ and A.M.Y.] prior to the accrual of Symetra's offsetting claims." The court also denied Symetra's subsequent motion for a judgment as a matter of law.

The case went to a jury, which found that Symetra had received notice that RSL-3B had assigned the Meza and Reihs payments by 2005, well before its offsetting claims accrued. Therefore, the district court ruled that Symetra could not assert its rights to offset against assignees FinServ and A.M.Y. Symetra filed a renewed motion for judgment as a matter of law, arguing that, if the law were properly applied, no reasonable jury could find that Symetra had notice of assignment in 2005. The district court denied the motion. Symetra also moved for a new trial, arguing that the notice finding was

---

[5] Eventually, RSL-3B transferred its rights in the Meza and Reihs payments to different entities also controlled by Feldman.

4

No. 18-20245 c/w No. 18-20762

unsupported by the evidence. That motion was likewise denied. Symetra timely appealed.

## II.    Standard of Review

"We review the denial of a motion for judgment as a matter of law de novo but apply the same legal standard as the district court." *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 675 (5th Cir. 2016). We will reverse the district court "if the legal conclusions implied from the jury's verdict cannot in law be supported by [the jury's factual] findings." *Id.* at 676 (quoting *Am. Home Assurance Co. v. United Space All., LLC*, 378 F.3d 482, 488 (5th Cir. 2004)). Notice is generally "an inference of fact." *Exxon Corp. v. Raetzer*, 533 S.W.2d 842, 846 (Tex. Civ. App.—Corpus Christi 1976, writ ref'd n.r.e.). Notice "becomes a question of law only when there is no room for ordinary minds to differ as to the proper conclusion to be drawn from the evidence." *BarclaysAmerican/Bus. Credit, Inc. v. E & E Enters., Inc.*, 697 S.W.2d 694, 700 (Tex. App.—Dallas 1985, no writ). The issue here is not the jury's construction of the facts, to which great deference would be owed, but rather the district court's construction of the law of "notice," which is reviewed de novo. *United States v. Posada Carriles*, 541 F.3d 344, 353 (5th Cir. 2008) ("[W]e review de novo the district court's interpretation of the law."); *Pendarvis v. Ormet Corp.*, 135 F.3d 1036, 1038 (5th Cir. 1998) ("We review the district court's construction of state law de novo."); *see Palmco Corp. v. Am. Airlines, Inc.*, 983 F.2d 681, 685 (5th Cir. 1993) ("[T]he issue [of notice for breach of contract] is a matter of law based upon the undisputed facts of this case.").

## III.    Discussion

The parties agree, and choice-of-law rules dictate, that Texas law applies. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938). Normally, in diversity cases like this one, federal courts "look to the final decisions of the

state's highest court." *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003). However, the Texas Supreme Court has not squarely addressed the parameters of whether an account debtor may be given notice of assignment by the filing of a financing statement. Accordingly, we must make an "*Erie* guess" as to how the Texas Supreme Court would rule. *Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008) (per curiam).

Section 9.404(a) of the Texas Business and Commerce Code governs whether an account debtor's right to offset a debt takes priority over a security interest in that debt. TEX. BUS. & COM. CODE ANN. § 9.404(a); *see BarclaysAmerican*, 697 S.W.2d at 698 (interpreting TEX. BUS. & COM. CODE ANN. § 9.318(a) (1974), a former version of section 9.404(a) with substantially similar language). Under section 9.404(a)(2), "the rights of an assignee are subject to . . . any other defense or claim of the account debtor against the assignor that accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee." Therefore, the interests held by FinServ and A.M.Y. would be subject to Symetra's offset rights against RSL-3B unless Symetra received notice of their security interests before its rights accrued. TEX. BUS. & COM. CODE ANN. § 9.404(a).

The parties agree that Symetra did not have actual knowledge of the assignment until the 2012 letter, well after Symetra's offset rights accrued. But FinServ and A.M.Y. argue that Symetra had inquiry notice, or "reason to know," that the Meza and Reihs payments were assigned based on "all the facts and circumstances" available to Symetra before accrual. *See id.* § 1.202(a). They make several arguments to support this contention. First, they assert that Symetra is a sophisticated party in the structured settlement and securitization industry, originating over $40 billion of secured loans. Second, they point out that Symetra received notice of transfer agreements for the Meza and Reihs payments that stated that Rapid "may assign all or any

portion of its right, title, and interest in and to this Agreement . . . without the consent of any other person." Third, they argue that Symetra was aware that Rapid and RSL-3B and their existing assignees could make further assignments of the payments. Fourth and finally, they claim that according to industry practice, a company in Symetra's position could and should have conducted a record search to find financing statements and determine the identity of RSL-3B's assignees.

FinServ and A.M.Y. essentially argue that because Symetra knew that Rapid and RSL-3B *could* assign their security interests, Symetra was on notice of, and thus had a duty to look for, hypothetical assignments. Even accepting the facts as asserted by FinServ and A.M.Y. and found by the jury, the law does not support this conclusion. The priority rules of the Texas Business and Commerce Code do not place the burden on an account debtor to search for and discover assignments of the debt. *See id.* § 9.404(a).

Even assuming that an account debtor need not receive formal notice like the 2012 letter, section 9.404(a) still requires "actual notice" of assignment. *BarclaysAmerican*, 697 S.W.2d at 699 ("[T]he account debtor's right to assert claims against the assignee should not be disturbed until [it] has actual notice of the assignment."). Actual notice is not the same as actual knowledge, but the notice requirement must be strict enough to "protect the rights of an account debtor." *Id.*; *see* TEX. BUS. & COM. CODE ANN. § 1.202 (a)–(b) (defining "notice" as broader than "actual knowledge"). According to this standard, the financing statement existing in the world somewhere is not the same thing as Symetra's receiving actual notice. *See* TEX. BUS. & COM. CODE ANN. §§ 9.404(a). A financing statement is not transmitted to an account debtor and therefore gives it no notice or reason to know that a debt has been assigned. *See id.* § 1.202(a). An account debtor would find the financing statement only if it were continually searching for one, which is not what the statute requires:

7

instead, the assignor or assignee has the burden to provide notice to the account debtor. *See id.* § 9.404(a).

"An account debtor . . . is not obligated to check the UCC recordings continually to ascertain whether the debt has been assigned[.]" *4447 Assocs. v. First Sec. Fin.*, 889 P.2d 467, 473 n.9 (Utah Ct. App. 1995). This is true even though a financing statement has been filed and the account debtor knows that the debt can be assigned freely. Notice of a possibility that there could be an assignment is not actual notice that assignment occurred. *See Citizens State Bank of Corrigan v. J.M. Jackson Corp.*, 537 S.W.2d 120, 120–21 (Tex. Civ. App.—Houston [14th Dist.] 1976, no writ) (holding under Texas law that pre-assignment instruction to pay the eventual assignee on an invoice did not provide notice to an account debtor that the right to payment had been assigned). Put differently, knowledge that a debt may be assigned in the future does not create a duty to inquire and a corresponding generalized inquiry notice of all potential assignments. Constructive knowledge from a document that could have been found if a search were conducted is not "actual notice" in this context under these statutes.

Other courts have reached the same conclusion. In *In re Alliance Health of Fort Worth Inc.*, a Texas federal district court held that "mere filing of a UCC financing statement is not notice" to an account debtor. 240 B.R. 699, 704 (N.D. Tex. 1999). Instead, "the burden is on the secured creditor to establish that the account debtor received notice." *Id.* Likewise, the Tenth Circuit has held that "[a] filed financing statement offers no actual notice of the assignment's existence that would affect an account debtor's right to assert subsequent claims and defenses." *In re Davidson Lumber Sales, Inc.*, 66 F.3d 1560, 1566 (10th Cir. 1995) (emphasis removed) (quoting *4447 Assocs.*, 889 P.2d at 473 n.9).

This case is not like those where the specific circumstances gave rise to a conclusion of actual notice.  *See* TEX. BUS. & COM. CODE ANN. § 1.202(a) (providing that notice of a fact exists when a person, "from all the facts and circumstances known to the person at the time in question, has reason to know that it exists"); *Robert Parker's Truck & Trailer Repair, Inc. v. Speer*, 722 S.W.2d 45, 48 (Tex. App.—Houston [1st Dist.] 1986, no writ) ("'Actual notice' embraces those things that a reasonably diligent inquiry and exercise of the means of information at hand *would have* disclosed.").  Instead, this falls into the category of speculation or suspicion:  "The realm of suspicion, and conjecture or surmise based upon it is outside the bounds of the doctrine of implied notice." *Steinmetz & Assocs., Inc. v. Crow*, 700 S.W.2d 276, 280 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.) (discussing implied notice under Texas contract law).  Although Symetra knew that the payments might be assigned, and even if it knew that such payments were routinely assigned in the structured-settlement industry, it could not have had more than a suspicion that the payments had in fact been assigned.

We note that in addition to being untethered to any supporting law, the broad inquiry requirement advanced by FinServ and A.M.Y. would be especially onerous for an entity like Symetra, which is an account debtor for a vast number of structured settlements.  The relevant statutes impose no such burden.  Under Texas law, an account debtor is entitled to assert defenses against an assignee until it receives actual notice of assignment.  TEX. BUS. & COM. CODE § 9.404(a); *BarclaysAmerican*, 697 S.W.2d at 699.

## IV.   Conclusion

Filing a financing statement does not provide actual notice.  Without an inquiry duty, Symetra's failure to find the financing statement is not "actual notice."  Because the facts presented do not support the conclusion of actual notice, the district court should have granted judgment in favor of Symetra as

No. 18-20245 c/w No. 18-20762

a matter of law, since Symetra did not receive notice that the Meza and Reihs payments were assigned to FinServ and A.M.Y. until 2012, after its offset rights accrued. Its defenses were thus not subordinated to the security interests held by FinServ and A.M.Y.[6] Therefore, we REVERSE the district court's judgment and REMAND to the district court to RENDER judgment as a matter of law for Symetra.

---

[6] Accordingly, we do not reach the other issues raised by Symetra.